## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

Mr. Asa Mossman                          :
1013 19th St. SE                         :
Cedar Rapids, IA 52403                   :
                                         :
           &amp;     :
                                         :
Ms. Hella Shriver                        :
d/b/a HS Properties                      :
PO Box 313                               :
LoneJack, MO 64070                       :
                                         :     CIVIL ACTION NO.:
           &amp;     :
                                         :     COMPLAINT
Mr. Winston Tracy Mills                  :
1643 B Savannah Hwy. Suite 319           :
Charleston, SC 29407                     :
                                         :
           &amp;     :
                                         :
Steve and Susan Harrison                 :
Equity Trust Co.                         :
112 Millburgh Ln.                        :
Goose Creek, SC 29445                    :
                                         :
           &amp;     :
                                         :
Harold and Sarah Schoeffler              :
Real Estate Holdings Co., LLC            :
3502 E. Simcoe St.                       :
Lafayette, LA 70501                      :
                                         :
           &amp;     :
                                         :
Ms. Helen Fitzgerald                     :
19 Riverside Dr.                         :
Dover, NH 03820                          :

```
                    &                    :
                                         :
Emanuel and Jessica John                 :
561 S. Park St.                          :
Casper, WY 82601                         :
                                         :
                    &                    :
                                         :
Butler Plantations, LLC                  :
3405 Stonewall St.                       :
Brunswick, GA 31520                      :
                                         :
                    &                    :
                                         :
Chris and Tomika Allen                   :
5395 Salem Springs Dr.                   :
Stonecrest, GA 30038                     :
                                         :
                    &                    :
                                         :
Grant J. Anderson                        :
1001 Churchman Ave.                      :
Indianapolis, IN 46203                   :
                                         :
                    &                    :
                                         :
Ms. Shraddha Kanak                       :
7M Apartments LLC                        :
4731 N. Pine Hills Rd.                   :
Orlando, FL 32808                        :
                                         :
                    &                    :
                                         :
7M Real Estate LLC                       :
1625 Mercy Dr.                           :
Orlando, FL 32808                        :
                                         :
                    &                    :
                                         :
                                         :
```

```
                                            :
                                            :
Mr. Richard McConkie                        :
302 Ihei                                    :
Chatan, Okinawa                             :
Japan 904-0102                              :
                                            :
            &                               :
                                            :
Titans Creek LLC                            :
535 Edna Dr.                                :
Columbia, KY 42728                          :
                                            :
            &                               :
                                            :
Ms. Regina Tillman                          :
19303 Kemp Ave.                             :
Carson, CA 90746                            :
                                            :
            &                               :
                                            :
Dennis R. and Roseanne D. Norton            :
151 Christina Maria Way                     :
Cedar Point, NC 28584                       :
                                            :
            &                               :
                                            :
The National Apartment Association          :
4300 Wilson Blvd., Suite 800                :
Arlington, VA 22203                         :
                                            :
            &                               :
                                            :
National Association of Residential         :
Property Managers®                          :
1403 Greenbrier Parkway, Suite 150          :
Chesapeake, VA 23320                        :
                                            :
            &                               :
                                            :
```

Millstone Properties, Inc.                     :
53 W. Jackson Blvd., Ste. 1734                 :
Chicago, IL 60604                              :
                                               :
            &                                  :
                                               :
Mr. Jason Sudia                                :
360 Fairview Ave.                              :
Colonia, NJ 07067                              :
                                               :
            &                                  :
                                               :
Amanda Fletcher                                :
933 Fernwood Rd.                               :
Moorestown, NJ 08507                           :
                                               :
            &                                  :
                                               :
CFH Properties LLC                             :
P.O. Box 60095                                 :
Seattle, WA 98160                              :
                                               :
                Plaintiffs,                    :
                                               :
        v.                                     :
                                               :
U.S. Centers for Disease Control and           :
Prevention                                     :
1600 Clifton Rd.                               :
Atlanta, GA 30329                              :
                                               :
            &                                  :
                                               :
Rochelle P. Walensky,                          :
Director of the U.S. Centers for               :
Disease Control and Prevention                 :
1600 Clifton Rd.                               :
Atlanta, GA 30329                              :
                                               :
            &                                  :

Nina B. Witkofsky,                          :
in her official capacity as                 :
Acting Chief of Staff for the               :
U.S. Centers for Disease Control            :
and Prevention                              :
1600 Clifton Rd.                            :
Atlanta, GA 30329                           :
                                            :
            &                               :
                                            :
Norris Cochran,                             :
in his official capacity as                 :
Acting Secretary of the                     :
U.S. Department of Health and               :
Human Services                              :
200 Independence Ave. SW                    :
Washington, DC 20201                        :
                                            :
            &                               :
                                            :
U.S. Department of Health and               :
Human Services                              :
200 Independence Ave. SW                    :
Washington, DC 20201                        :
                                            :
            &                               :
                                            :
The United States of America,               :
Merrick Garland,                            :
U.S. Attorney General                       :
950 Pennsylvania Ave. NW                    :
Washington, DC 20530                        :
                                            :
                                            :
            Defendants.                     :

## COMPLAINT AND CLASS ACTION

When the individual Plaintiffs in this action, and the members of Plaintiffs National Apartment Association ("NAA") and the National Association of Residential Property Managers ("NARPM"), rented their respective properties, they expected, and had every reason to expect, that their tenants would uphold their end of the contracts and pay their rent. They also expected, and had every reason to expect, that if the tenants did not pay their rent, that they could resort to the law and the court system to evict their tenants so that they could regain possession of their property and let it to tenants who would pay rent. The laws of all fifty states allowed the remedy of eviction through state processes and provided it as a substitute to self-help, which historically led to violence and other problems.

Plaintiffs upheld and continue to uphold their end of the bargain. They provide a habitable home to their tenants and continue to pay for maintenance, often utilities, and other expenses. When their tenants breached their respective agreements, Plaintiffs should have been able to follow the lawful processes laid down by state law for retaking possession of their homes. They cannot do that, however, because of an order, completely without lawful authority or precedent, issued by the administrative agency the U.S. Centers for Disease Control and Prevention ("CDC").

Plaintiffs have been unexpectedly targeted by unelected agency bureaucrats in the federal government who have no authority over housing or state courts. Plaintiffs failed to anticipate that CDC, a federal agency, would issue (and extend repeatedly) a sweeping unilateral order suspending the action of *state* courts under the flimsy premise that doing so was "necessary" to control the spread of Covid-19. CDC's actions are not authorized by statute or regulation. But even if they were, they are beyond the enumerated powers of Congress, unprecedented in our history, and an affront to core constitutional limits on federal power. If allowed, the Order would abrogate the right to access the courts, violate limits on the Supremacy Clause, exceed the power delegated the CDC by Congress or offend the non-delegation doctrine, and traduce anti-commandeering principles. CDC's effort to seize control of legal regimes in a traditional area of state law on such an insupportable basis must be rejected.

## PARTIES

1.     Plaintiff Asa Mossman is a natural person and a resident of Cedar Rapids, Iowa. He is a home provider with property in Iowa and has a tenant in default.

2.     Plaintiff Hella Shriver a resident of Jackson County, Missouri, is a natural person, doing business as HS Properties, through which she rents a property in Missouri.  She has a tenant in default.

3.     Plaintiff Mr. Winston Tracy Mills is a natural person and a resident of South Carolina.  He rents property in South Carolina and has a tenant in default.

4.     Plaintiff Ms. Shraddha Kanak is a natural person and resident of Florida.  She is the principal of Plaintiffs 7M Apartments LLC and 7M Real Estate LLC, both of which are registered under the laws of Florida and located in Orlando, Florida.

5.     Plaintiffs Steve and Susan Harrison are natural persons, spouses, and co-owners of an IRA managed by Equity Trust Co., organized under the laws of South Carolina.  They rent property in South Carolina and have a tenant in default.

6.     Plaintiff Harold and Sarah Schoeffler Real Estate Holdings Co., LLC is a limited liability company ("LLC") organized under the laws of Louisiana; its principals are spouses Harold and Sarah Schoeffler.  Its tenant is in default.

7.     Plaintiff Helen Fitzgerald is a natural person living in New Hampshire. She has a rental property in New Hampshire, and the tenant is in default.

3

8. Plaintiffs Emanuel and Jessica John are natural persons and spouses in Wyoming. They own a rental property in Louisiana and have a tenant in default.

9. Butler Plantations, LLC is an LLC organized under the laws of Georgia. Its principal is the natural person Rhett E. Butler. It owns rental properties in Georgia with tenants currently in default.

10. Plaintiffs Chris and Tomika Allen are natural persons, spouses, and residents of the State of Georgia. They own rental property in Georgia and have a tenant in default.

11. Plaintiff Grant J. Anderson is a natural person and resident of Indiana. He owns rental property in Indiana with a tenant in default.

12. Plaintiff Shraddha Kanak is a natural person residing in Florida and the principal of Plaintiffs 7M Apartments LLC and 7m Real Estate LLC both controlling rental apartment buildings in Orlando Florida. Both apartment buildings have dozens of tenants in default.

13. Plaintiff Mr. Richard McConkie is an American citizen and natural person who normally resides in Virginia. He is currently a resident of Okinawa, Japan working for the American military presence there. He rents out his house in Virginia to a tenant who is currently in default.

14. Plaintiff Titans Creek, LLC is a Kentucky LLC, the principal of which are natural persons including Ms. Kendra Kessinger, also a resident of Kentucky.

4

Titans Creek rents residential property in Kentucky and currently has 17 tenants in default.

15.     Regina Tillman is a natural person residing in California with a rental property in Decatur, Georgia whose tenant is in default.

16.     Plaintiffs Dennis and Roseanne D. Norton are natural persons and spouses in North Carolina. They own ten rental units in North Carolina, two of which have tenants in default.

17.     Plaintiff National Apartment Association ("NAA") is a trade association for owners and managers of rental housing that is comprised of 157 state and local affiliated apartment associations, and over 82,600 members managing more than 9.7 million rental homes throughout the United States, including Iowa, as well as Canada and the United Kingdom. Members of NAA have tenants who are in default on their leases.

18.     Plaintiff National Association of Residential Property Managers® ("NARPM") is a trade association of those who rent and maintain rental properties throughout the United States, including in Iowa. They have members who have tenants in default.

19. Plaintiff Mr. Jason Sudia is a natural person and a resident of New Jersey. He owns a rental property and has a tenant in default.

20. Millstone Properties, Inc. is an Illinois corporation whose President is Dan Wagenmaker. It owns rental property in Chicago, Illinois, which has a tenant in default.

21. Plaintiff Amanda Fletcher is a natural person and a resident of New Jersey. She owns rental property in New Jersey with a tenant in default.

22. Plaintiff CFH Properties LLC is an LLC formed under the laws of Washington State and registered as a foreign corporation in Oregon. The principals are spouses Colin L. Hooks and Francisca Nerida-Hooks, natural persons living in Washington State. It owns rental property in Oregon with a tenant who is currently in default.

23. Defendant CDC is an agency of the United States situated within the U.S. Department of Health and Human Services ("HHS") and headquartered in Atlanta, Georgia.

24. Defendant Rochelle P. Walenksy is the Director of the CDC and is sued in her official capacity.

25. Defendant Nina B. Witkofsky is the Acting Chief of Staff for CDC and is the agency head responsible for the challenged agency action. She is sued in her official capacity.

26. Defendant HHS is an agency of the United States.

27. Defendant Acting Secretary Norris Cochran is the acting agency head of the HHS and is sued in his official capacity.

28. The United States of America is the Government of the United States organized under the Constitution of the United States with service effected upon Merrick Garland the Attorney General of the United States, as well as the U.S. Attorney for the Northern District of Iowa.

## JURISDICTION AND VENUE

29. This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331 as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.

30. This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

31. Venue for this action properly lies in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(b)(1), (2) because the defendants are present in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

### A. The Eviction Moratorium

32.     On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, P.L. 116-316, which included in Section 4024 a limited and temporary moratorium on evictions for certain types of federally backed housing that expired on July 24, 2020.

33.     On September 1, 2020, Defendant Acting Chief Witkofsky issued a nationwide order *not* limited to certain types of federally backed housing.  It was entitled, "*Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19*" (the "Eviction Moratorium" or the "CDC Order").

34.     The nationwide CDC Order became effective upon publication in the Federal Register, which occurred on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020), *available at* https://www.govinfo.gov/content/pkg/FR-2020-09-04/pdf/2020-19654.pdf.

35.     The CDC Order provided, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id*.

36.     The CDC Order, by its terms, was not effective so long as a local jurisdiction applied more onerous eviction restrictions. *Id*.   In reality, however, the CDC order stood and stands as a backstop to all similar state eviction moratoriums. Any move to lift state moratoriums by governors, legislatures, courts, or other responsible state bodies would incur whatever political consequences from attempting to lift their moratoriums while still not allowing home providers access to their properties.  In addition, the very existence of the federal Eviction Moratorium had the natural consequence of emboldening and causing tenants to cease paying rent to the Plaintiffs.  Regardless of what states do, the Eviction Moratorium purports to deprive home providers of any resort to state mechanisms for eviction.  And state laws no longer permit self-help evictions by changing locks.

37.     The CDC Order said, "'Evict' and 'Eviction' mean any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. This does not include foreclosure on a home mortgage." *Id*. at 55293.  Perversely then, home providers like Plaintiffs here cannot pursue evictions, but if they default on their mortgages and lose their properties, the banks can so evict!  The same is true for Plaintiffs who can lose their property at a tax sale when their tenants' failure to pay rent leaves Plaintiffs unable to pay local taxes on their properties.

9

38.     The CDC Order also said, "[A] person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both[.]" *Id*. at 55296. In imposing the lesser of these criminal penalties, there is no requirement for the CDC to prove that any eviction led to the spreading of Covid-19 or any other collateral harm.

39.     To invoke the CDC Order, tenants must complete and sign a declaration, certifying under penalty of perjury that the tenant: is unable to pay rent "due to substantial loss of household income, loss of compensable hours of work or wages, lay-offs, or extraordinary out-of-pocket medical expenses;" is "using best efforts to make timely partial payments that are as close to the full payment as … circumstances permit"; has "used best efforts to obtain all available government assistance for rent or housing"; earns less than $99,000 per year (or $198,000 for joint filers); and is "likely to become homeless" if evicted.  These declarations, however, go unchallenged.  State courts rarely allow inquiry as to whether the facts behind the declaration are truthful.  Mere mention of the CDC Order forestalls evictions.

40.     The initial CDC Order was effective upon publication until December 31, 2020, "unless extended." *Id*. at 55297.

41.    The CDC Order was extended past December 31, 2020, and most recently by Defendant Walensky on January 29, 2021, effective January 31, 2021, and not set to expire until March 31, 2021.  CDC, Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations 70.2, *available at* https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-Moratorium-01292021.pdf.

42.    The CDC Order, which does not preclude evictions based on criminal activity, property damage, violations of building or health codes, or violations of any other contractual provisions, does not explain how tenants evicted for non-payment of rent are more likely than other tenants to spread Covid-19 if evicted.  Nor does the order explain why CDC believes these tenants are likely to spread Covid-19 across state lines following an eviction for non-payment of rent.

43.    Once again, this extraordinary and unprecedented measure was issued without statutory authority and beyond the power of the federal government on the pretext that preventing only those evictions for the non-payment of rent somehow limits the spread of Covid-19.  *Id.*

44.    Notably, the CDC Order called on state and local officials to assist with enforcement of the CDC Order, whether or not they wished to do so.  *Id.* ("Notice to Cooperating State and Local Officials").

11

45.     As of March 17, 2021, according to records kept by Defendant CDC, more than 72 million Americans have had at least one dose of a Covid-19 vaccine, and more than 39 million Americans are fully vaccinated. https://covid.cdc.gov/covid-data-tracker/#vaccinations (last checked March 17, 2021).

46.     Also according to the CDC, almost 22% of the American population has been vaccinated, with such vaccines concentrated in the most vulnerable populations, and 12% of the country is fully vaccinated, also concentrated among the most vulnerable. https://covid.cdc.gov/covid-data-tracker/#vaccinations (last checked March 17, 2021).

47.     According to news reports and widely consulted statistics, the United States has vaccinated more people against Covid-19 than Europe and China combined and is the most-vaccinated large country in the world. https://ig.ft.com/coronavirus-vaccine-tracker/?areas=usa&areas=eue&areas=chn&cumulative=1&populationAdjusted=0.

48.     In addition, CDC estimates that about 53 million Americans had had Covid-19 by September 2020. https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciaa1780/6000389

12

49.     Yet nothing, in even the most recent CDC Order, treats the vaccinated or those who have already had the disease and thus have more natural resistance differently from anybody else.

50.     Despite the greatly changed disease and risk environment since September 2020, the Eviction Moratorium remains in place as a national housing policy masquerading as a public health policy, devastating home providers and eliminating their rights to access state courts across the country—all by an agency with no authority over housing policy.

51.     The CDC Order affects the rights to real property.  Money damages— particularly theoretical money damages from tenants who have attested to their insolvency in order to qualify for the moratorium—are inadequate to compensate denial of access to and possession of real property, which is treated differently from other kinds of property under the common law as it existed at the time the Constitution was enacted and by the law of the states since that time.  Private landowners rely on state property law when purchasing real property, and no federal law of property rights should upset this substantial interest.  The Eviction Moratorium thus works a particular, irreparable harm on those it affects and subordinates state law in an area traditionally left almost wholly to state power.

52.     The harm is also irreparable given the duration of the CDC Order and the order's reliance on the tenants' inability to pay.  In other words, the Eviction

Moratorium protects only those tenants who attest that they have no ability to pay rent. The longer the CDC Order remains in effect, the more unpaid rent accrues, and the less hope Plaintiffs have of ever recovering full damages from their defaulting tenants.

53.     The harm is also irreparable because by CDC taking this unprecedented action, plaintiffs, and the class of which they are a part, have had the value of their rental properties permanently reduced, as every buyer and seller must price in an action like this being taken by the CDC if Covid-19 flares up against, another pathogen emerges, or because there is no limiting principle, the generic flu season gets worse than normal. Simply put, ceasing the current order does not eliminate the irreparable harm without a declaratory statement **and** court injunction.

### B. <u>The Plaintiffs' Inability to Evict Tenants and Recover Their Property</u>

54.     Plaintiff Mossman has a single unit in default in Cedar Rapids, Iowa, and is owed many thousands of dollars. In December 2020, he obtained a judgment of eviction against his tenants in Linn County, Iowa court. His tenants signed the CDC Order's required recitations that they make less than $99,000 a year, are unable to pay, and are making best efforts to do so. The state court stayed his eviction order pending the expiration of the CDC Order's Eviction Moratorium. The state court reissued the stay when Defendants reissued the CDC Order. He would evict his tenants and reclaim his property except for the CDC Order. The lease is up in March

14

2021, but Mr. Mossman still cannot evict the tenant. His tenants are insolvent, and any resort to obtaining money damages from them is chimerical. The Defendants' unlawful actions have therefore denied him the right to his property as allowed under Iowa law and in contravention of the laws of the United States.

55.    Plaintiff Shriver provides residential housing to a tenant in Independence, Missouri. She has leased her property to two tenants for $795 a month since October 2019. They have paid no rent since August 2020. She is owed thousands in unpaid rent and unpaid court costs and legal fees allocated by the state court in Missouri from actions Plaintiff Shriver has initiated. In September 2020, she provided a formal demand for rent and notice of vacation of the property as required by Missouri law. She brought a writ of possession in the 16th Judicial Circuit Court in Jackson County, Missouri. At the hearing on that action, her tenants presented the form noted in the CDC Order, attesting that they made less than $99,000 a year, were unable to pay because of the economic stresses of Covid-19, and had used best efforts to obtain government assistance and were using best efforts to make partial payments. The court made no effort, nor allowed any effort, to test the truth of these declarations and, in general, courts do not. Upon receipt of the declarations, the court dismissed the writ without prejudice to refile in January when the CDC Order was set to expire. Because the order has not expired, Ms. Shriver is allowed no further action. Given their attestations on the declarations, and their

15

inability to pay rent since August 2020, the tenants are likely insolvent, and any resort to obtaining money damages is chimerical. Plaintiff Shriver is being irreparably harmed by the CDC Order and Eviction Moratorium.

56. Plaintiff Kanak is the principal of Plaintiffs 7M Apartments LLC and 7M Real Estate LLC, both of which are located in Orlando, Florida, where they rent 93 and 40 units, respectively. Plaintiffs' tenants have come into their offices and handed in the CDC declaration and stated that Plaintiffs cannot evict them for their failure to pay rent. In state-court eviction proceedings, the Florida state courts have granted motions to stay the Plaintiffs' eviction proceedings based on the CDC Order.

57. Plaintiff NAA is a trade association for owners and managers of residential rental housing that is comprised of 157 state and local affiliated apartment associations, and over 82,600 members who manage more than 9.7 million rental homes throughout the United States, including in Iowa, as well as Canada and the United Kingdom. NAA has members throughout the United States who are entitled to writs of possession and eviction against tenants in default in states without eviction moratoria. NAA's members continue to provide habitable premises to their tenants, but they have been prohibited by CDC from utilizing existing state law procedures for evicting delinquent tenants for nonpayment of rent when presented with a form declaration. Because of the CDC Order, NAA's members have suffered significant economic damages, including unpaid rent and fees, as well as monthly

maintenance costs, damages to their property, and the lost opportunity to rent their properties to other people at fair market value or use the properties themselves. NAA's members will be unlikely to obtain any economic relief or damages from their tenants once the CDC Order is lifted because, by definition, any tenant presenting an appropriate attestation lacks the ability to pay the back rent and is consequently insolvent. NAA's members will lose millions of dollars in uncollected rents, while expending huge sums for maintenance and costs. Many of NAA's member businesses are unlikely to recover from the economic stress caused by the CDC Order. NAA members' only opportunity to mitigate their losses will be from ousting their tenants who are in wrongful possession of the premises. They are being irreparably harmed by the CDC Order.

58. Plaintiff NARPM is a trade association of residential property managers throughout the United States, including in Iowa. It has over 5,000 members including 8 in Iowa. NARPM members manage more than two million rental units across the country. They have members who have tenants who have failed to pay rent for more than one month. They have the right to evict tenants under state law, including that of Iowa. However, some of those tenants have provided the statement recommended by the CDC order, leaving NARPM's members unable to use the Iowa state courts to evict them. Like the other Plaintiffs'

tenants, those of NARPM's members who have relied on the CDC Order are insolvent. These members are being irreparably harmed by the CDC Order.

59.     Mr. Winston Tracy Mills owns residential rental property in South Carolina and has a tenant in default. The tenant defaulted in April 2020 and the lease expired in May of 2020. The tenant is not paying rent and is relying on the CDC Order. Plaintiff Mills is owed at least $24,000 in rent. Mr. Mills has instituted state law proceedings but will be unable to evict given the CDC Order. Considering Mr. Mills's tenant is unable to pay any rent and now owes at least $24,000, the tenant is insolvent, and any reliance on obtaining a future judgment would be chimerical. The CDC Order is irreparably harming Mr. Mills.

60.     Equity Trust Co. is a custodian of an IRA organized under the laws of South Carolina and the principals and owners of the IRA are spouses Steve and Susan Harrison. The property is located in Berkley County, South Carolina. The tenants stopped paying rent in November 2020. The monthly rent is $1,200 per month, and Plaintiff is owed thousands of dollars. The tenants, aware of the CDC Order, are not paying rent as they claim to qualify for the terms of the necessary declaration under the CDC Order, stating the amounts they make and the economic stress of Covid-19. They are likely insolvent, and any reliance on obtaining a judgment would be chimerical. Their tenants have indicated that they are relying on the CDC Order and understand that it applies to them. State court eviction processes

18

in South Carolina would be fruitless under these circumstances. The CDC Order has irreparably harmed Equity Trust Co.

61. Plaintiff Harold and Sarah Schoeffler Real Estate Holdings Co., LLC ("Schoeffler Real Estate") is an LLC organized under the laws of Louisiana, and its principals are spouses Harold and Sarah Schoeffler. Its tenant is in default. The tenants have not paid rent since June 2020 and are in default more than $8000. They are relying on the CDC Order to resist eviction under Louisiana law. The tenant produced the CDC Order declaration at the state court proceeding for eviction on October 13, 2020, and the Louisiana courts refused to evict upon that submission. They are likely insolvent and any resort to obtaining money judgment would be chimerical. Plaintiff Schoeffler Real Estate is being irreparably harmed by the CDC Order.

62. Plaintiff Helen Fitzgerald is a natural person living in New Hampshire. She has a rental property in New Hampshire, and the tenant is more than $14,000 in default on rent and utilities. The last payment of any kind was in August 2020. At an eviction hearing in state court in October 2020, the tenant provided the declaration required by the CDC Order, and the court halted eviction, which cannot be resumed in state court while the CDC Order remains in effect.

63. Plaintiffs Emanuel and Jessica John are natural persons and spouses in Wyoming. They own a single-family rental property in Breaux Bridge, Louisiana.

19

The tenant has not paid rent since September 2020 and owes more than $12,000 in back rent and late fees. But the tenant has provided the recommended declaration under the CDC Order that he is unable to pay rent because of Covid-19, makes less than $99,000 a year, and will do his best to pay what he can. The courts of Louisiana refuse to evict due to the CDC Order. The tenant is insolvent and any attempt to recover redress through money damages is chimerical. Plaintiffs Johns are being irreparably harmed by the CDC Order.

64. Plaintiff Butler Plantations, LLC is an LLC organized under the laws of Georgia. Its principal is the natural person Rhett E. Butler, Jr. of Georgia. It owns 12 rental properties in Georgia with three tenants currently in default whom Plaintiff cannot evict because of the CDC Order. The tenants are over $20,000 in arrears. After plaintiff filed for eviction, the tenants submitted the CDC information directly to the court in Georgia, which will not schedule any further hearings or proceed with the case because of those submissions. The Georgia courts have informed Plaintiff that they will not schedule hearings until the end of the Eviction Moratorium. Plaintiff still must pay all property taxes and keep up the property while being denied the revenue to do so. The defaulting tenants are insolvent and any attempt at

recouping these losses by judgments against them are chimerical.  The CDC Order is causing plaintiff irreparable harm.

65.    Plaintiffs Chris and Tomika Allen are natural persons, spouses, and residents of the State of Georgia.  They own rental property that is in default in Fulton County, Georgia.  The tenant is more than $5,000 behind in rent.  They attempted eviction on February 28, 2021, but the state court refused because of the CDC Order, which the tenant referenced in her submission to the Court.  They were forced into mediation, but the tenant did not pay the amount agreed to at mediation.  The tenant is insolvent, and Plaintiffs are unlikely to be able to obtain the money owed.  They would evict the tenant but are being prevented by the CDC Order.  The CDC Order is irreparably harming plaintiffs.

66.    Plaintiff Grant J. Anderson is a natural person and resident of Indiana.  He owns two rental properties in Indiana, both of which have a tenant currently in default.  The monthly rent for the properties is $1,131 and $840, respectively.  The tenants have not paid rent in over a year and are in default over $15,000.  The tenant who owes $1,131 per month in rent has cited the CDC Order as the reason for not paying and cannot be evicted.  The tenants are insolvent and any attempt to obtain

damages would be chimerical. Plaintiff Anderson would evict the tenants if not prevented by the CDC. He is being irreparably injured by the CDC Order.

67. Plaintiff Shraddha Kanak is a natural person residing in Florida and the principal of Plaintiffs 7M Apartments LLC and 7M Real Estate LLC (together "the Kanak Plaintiffs"), both controlling rental apartment buildings in Orlando, Florida. Both apartment buildings have dozens of tenants in default. As many as 36 of their tenants have provided the declaration required by the CDC Order, and many of them falsely. Nonetheless the declarations alone cease eviction. Most of these tenants are nine months in arrears in rent and eligible for eviction under Florida law. While the Kanak Plaintiffs have received some rental reimbursement from state programs in Florida, they are routinely hundreds of thousands of dollars out of pocket on rent from the tenants' failure to pay their obligations. Even attempts to list the apartments for sale have so far been unavailing given the CDC Order. Because of the CDC Order, many tenants simply produce the required declaration and then fail to seek rental assistance as there is no penalty for not doing so. The Kanak Plaintiffs are being injured in hundreds of thousands of dollars that they will never see through hypothetical damage awards in the future; they would evict the tenants if they could.

68. Plaintiff Mr. Richard McConkie is an American citizen and natural person who normally resides in Virginia. He is currently a resident of Okinawa, Japan working for the American military presence there. He rents out his house in

Virginia to a tenant who is currently in default. The tenant has been $18,000 dollars in arrears in rent. Mr. McConkie has been able to recoup some of that through a Virginia program for landlords, but the tenant is still in arrears $4,200. Mr. McConkie is hopeful that the Virginia state program will reimburse him the rest of the unpaid rent. Mr. McConkie, however, would like to evict this tenant so that his income and control of his property is no longer at risk. Plaintiff cannot access the courts to evict because of the CDC Order.

69.     Plaintiff Titans Creek, LLC is a Kentucky LLC, the principal of which is the natural person Ms. Kendra Kessinger, also a resident of Kentucky. Titans Creek rents residential property in Kentucky and currently has 17 tenants in default. The trailer park in Columbia, Kentucky, has 17 tenants who have all raised, some by declaration under the CDC Order and some verbally the CDC Order preventing their eviction. Titans Creek is owed at least $41,000 in defaulted rent and obtaining this money from these tenants by money judgment is a chimerical option. Plaintiff would evict these tenants were the CDC Order not preventing it from doing so. Titans Creek is being irreparably harmed by the CDC Order.

70.     Plaintiff Regina Tillman is a natural person living in California. She has a rental property in Decatur, Georgia. Her tenant has not paid any of his $1,500 per month rent since February 2020. He is over $17,000 in arrears and is aware that the CDC Order prevents eviction. Plaintiff has no reasonable chance of receiving

23

the back rent from her tenant through a money judgment; she would evict the tenant if allowed.

71.     Plaintiffs Dennis and Roseanne D. Norton are natural persons and spouses in North Carolina.  They own ten rental units in North Carolina, two of which are in default. The monthly rent ranges from $600 to $750.  One defaulting tenant ceased paying in December 2020 and the other is two months in arrears but has made partial payments.  Plaintiffs would evict these tenants if they could.  Their tenants, however, are relying on the CDC Order and have made the recitations it requires, including that they make less than $99,000 a year, have been economically impacted by Covid-19, and will pay what they can when they can.  They have said they have attempted to get money from the State of North Carolina but have not been able to.  North Carolina had an eviction moratorium of its own that expired on January 31, 2021.  Plaintiffs' tenants are now relying on the existence of the CDC Order not to pay.  Any hope of recouping unpaid rent through money damages is chimerical.  Plaintiffs are being irreparably harmed by the CDC Order.

72.     Millstone Properties, Inc. ("Millstone") is an Illinois corporation that owns a rental property in Chicago.  The tenant, who was on a month-to-month lease, stopped paying rent in September 2019, but it took until January 2020 to obtain a state court judgment of eviction.  The sheriff was not to evict until March 2020, at which point the pandemic hit.  Since that time, the CDC Order and a similar order

24

by the Illinois Governor have prevented execution of Millstone's right to evict. The tenant owes approximately $37,000 but is insolvent and unlikely to pay any judgment. The CDC Order is causing irreparable harm to Millstone.

73.    Plaintiff Mr. Jason Sudia is a natural person and a resident of New Jersey. He owns two rental properties in New Jersey. The tenants for both properties are in default of rental obligations in excess of $10,000 and explain they won't pay as there is a rent moratorium in effect. He would evict them if he could but cannot under an order by the Governor of New Jersey, any legal challenge to which would be fruitless given that it is backstopped by the CDC Order. The tenants are likely insolvent, so the ability to obtain redress by money damages is chimerical. He is being irreparably harmed by the CDC Order.

74.    Plaintiff Amanda Fletcher is a natural person and a resident of New Jersey. She owns rental property in New Jersey which is currently in default. The tenant is in default over $25,000. Plaintiff Fletcher went to court and obtained judgment against the tenant for damages. The tenant still did not pay. Plaintiff then sought a judgment of eviction in the state court. Since then, April 2020, she has been prevented from obtaining eviction by the Governor's eviction order in New Jersey, backstopped by the CDC Order since early September. The tenant has

demonstrated complete inability to pay, and Plaintiff is being irreparably harmed by the CDC Order.

75.     Plaintiffs CFH Properties LLC is a Washington State LLC registered as a foreign corporation in Oregon.  It owns a rental property in Oregon, with a monthly rent of $1,475.  Its tenant is in arrears $16,225.  Plaintiff cannot evict the tenant because the Governor of Oregon has issued an eviction moratorium, which the CDC Order backstops by prohibiting eviction even after the state moratorium ceases. The tenant is unlikely to be able to pay any money judgment, and reimbursement of the Plaintiff is unlikely.  Plaintiff CFH Properties is being irreparably injured by the CDC Order.

76.     All of the Plaintiffs have maintained their properties and are current on all their obligations to tenants.  They are all bearing enormous financial burdens due to the Defendants' ordering them to house people to whom they are not related and with whom they have only a contractual relationship.  This ukase is unjust, unlawful, and unconstitutional. It represents a federal agency's arrogation of federal legislative power and state judicial power.

## COUNT I: UNLAWFUL AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(2)(B), (C)—CDC EXCEEDED ITS STATUTORY AND REGULATORY AUTHORITY BY ISSUING THE HALT IN RESIDENTIAL EVICTIONS ORDER

77.     Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

26

78.     Under the Administrative Procedure Act, this Court is required to hold unlawful and set aside agency action, findings, and conclusions that it finds to be contrary to constitutional right or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. *See* 5 U.S.C. §§ 706(2)(B), (C).

79.     The CDC Order was purportedly issued under the authority of "Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2."

Under 42 U.S.C. § 264(a), the CDC, through power vested in the Secretary of HHS, may only "make and enforce such regulations" as "are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession."  "For the purposes of carrying out and enforcing such regulations," the statute authorizes CDC to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.*

80.     As the second sentence of the statutory provision makes clear, Congress limited CDC's regulatory power to the types of actions identified in the illustrative list in the second sentence—things such as "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles." *Id.*  Reading these sentences together, the statute authorizes CDC, through HHS, to take certain actions

27

to inspect, sanitize, or even destroy contaminated "animals or articles" that may cause an interstate health risk. *Id.* "With this language, Congress directs the agency to act on specific animals or articles which are themselves infected or a source of contagion that present a risk of transmission to other people." *Skyworks Ltd. v. CDC*, 2021 WL 911720, at *9 (N.D. Ohio, Mar. 10, 2021).

81. The regulation of state-court eviction proceedings for the non-payment of rent is beyond the scope of CDC's statutory authority, as it has nothing to do with CDC's limited authority to inspect, sanitize, or destroy animals or other similar articles that may pose an interstate health risk to humans. "Defendants' theory renders the limitations of the statute—*e.g.* inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals, or articles to be so infected or contaminated—superfluous or surplusage which must be resisted." *Tiger Lily, LLC v. HUD*, No. 2:20-cv-02692, Slip. Op. at 14 (filed March 15, 2021) (citing *Yates v. United States*, 574 U.S. 528, 543 (2015)).

82. Under 42 C.F.R. § 70.2, when the CDC Director "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession" the Director is authorized to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection,

28

fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

83.     The CDC Order purports to restrict "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from "evict[ing] any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." 85 Fed. Reg. at 55292.  A "covered person" is "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating" certain information outlined in the Order.  85 Fed. Reg. at 55293; *see also* 85 Fed. Reg. at 55297 (CDC Declaration form). The original effective period of the Order was from September 4, 2020 through "at least" December 31, 2020. 85 Fed. Reg. at 55292.  As noted above, it has been reissued and reextended to March 31, 2021.

84.     The CDC Order by its terms applies only to States, local, territorial, or tribal areas that do not have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.  Its mere existence, however, has become well-known, and tenants across the country have relied on it to forgo rent payments.

85.     The CDC Order baldly states that Defendant Witkofsky "determined the temporary halt in evictions in this Order constitutes a reasonably necessary measure under 42 CFR 70.2 to prevent the further spread of Covid-19 throughout the United States." 85 Fed. Reg. at 55296. The Order further states that she "determined that measures by states, localities, or U.S. territories that do not meet or exceed these minimum protections [i.e., those that do not have their own more-restrictive residential eviction moratoria] are insufficient to prevent the interstate spread of COVID-19." 85 Fed. Reg. at 55296.

86.     The CDC Order does not identify or offer any analysis whatsoever about which States, local, territorial, or tribal areas have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.  Nor does it elucidate how a home provider, tenant, or court should so identify the states in which the Order is in effect.

87.     Individuals or organizations that violate the CDC Order are subject to criminal penalties, including fines and jail time. *See* 85 Fed. Reg. at 55296; *see also* 18 U.S.C. §§ 3559, 3571; 42 U.S.C. § 271; 42 C.F.R. § 70.18.

88.     Agencies have no inherent power to make law.  *See Loving v. United States*, 517 U.S. 748, 758 (1996) ("[T]he lawmaking function belongs to Congress … and may not be conveyed to another branch or entity.").  This limitation is a

constitutional barrier to an exercise of legislative power by the executive branch. Agencies have "no power to act … unless and until Congress confers power upon [them]." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

89.    Nothing in the relevant statutes or regulations purports to give CDC the power or authority to order an eviction moratorium.

90.    Nothing in the relevant statutes or regulations purports to give CDC the power or authority to criminalize otherwise lawful behavior.

91.    The Order was issued in excess of any statutory authority actually provided and is therefore invalid.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT II: ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)—THE ORDER IS NOT SUPPORTED BY A RATIONAL DETERMINATION DRAWN FROM SUBSTANTIAL EVIDENCE

92.    Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

93.    Under the Administrative Procedure Act, a court must set aside "arbitrary and capricious" agency action.  5 U.S.C. § 706(2)(A).

31

94. The CDC Order fails the arbitrary and capricious standard because it is not supported by a rational determination drawn from substantial evidence.

95. Even according to its own terms, CDC has not met its baseline obligation of showing that local jurisdictions are taking "insufficient" measures to prevent the spread of Covid-19, as required when CDC acts under the authority purportedly granted by 42 C.F.R. § 70.2 (granting authority to CDC when the agency "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases[.]").

96. CDC has also failed to catalogue in the administrative record or the Order itself the efforts taken by *any* jurisdiction to combat Covid-19; or explain why allowing eviction proceedings, more than any other aspect of prevention strategies, represents the line that states may not cross; nor has CDC cited *any* evidence that any infection has arisen because of an eviction proceeding, let alone evidence that evictions in general pose a significant danger to the public.

97. CDC's secondary conclusion, that an eviction moratorium is "necessary" to stop the spread of Covid-19 is unsupported by substantial evidence, and CDC has abjectly failed to stop the spread of Covid-19 to all 50 states. CDC made no findings that any significant portion of evicted tenants would travel interstate. *Terkel v. CDC*, 2021 WL 742877, at *7-8 (E.D. Tex. Feb. 25, 2021). The

32

CDC Order "applies without regard to whether an evicted tenant would move to a new city, much less a new state." *Id.* at *8. Moreover, "[t]he order applies without regard to a tenant's infection with, prior exposure to, or vaccination against COVID-19." *Id.*

98.     In fact, CDC is careful never to actually say that the moratorium is necessary—the best it says is that "[i]n the context of a pandemic, eviction moratoria—like quarantine, isolation, and social distancing—can be an effective public health measure utilized to prevent the spread of communicable disease." 85 Fed. Reg. at 55294. But even this tepid statement lacks any real evidentiary support.

99.     Instead, CDC relies on hyperbolic reasoning—saying that "mass evictions" and "homelessness" might increase the likelihood of Covid-19, and thus that that the *only* appropriate course of action is to halt evictions nationwide. *See* 85 Fed. Reg. at 55294-96. CDC does not explain sufficiently why this would be so or why other remedial measures are inadequate. *See Miller v. Hartford Life & Accident Ins. Co.*, 944 F.3d 1006, 1011 (8th Cir. 2019) (explaining that an agency's decision is arbitrary and capricious when it is not "supported by substantial evidence, meaning more than a scintilla but less than a preponderance").

100.    CDC does not explain why it chose $99,000 dollars as the amount a person could make and still not pay rent. This is arbitrary and capricious, as many tenants could be making more than their home providers and still not pay rent.

33

101. CDC does not explain why a person evicted for breaching their lease in a different manner than non-payment of rent—for instance, breaching a lease by housing persons who are not identified on the lease—would not cause the spread of Covid-19 in the way it purports that evictions for non-payment of rent would.

102. CDC also does not explain why a person who has bought and maintained a property must bear the costs and burdens of a rental agreement and be denied access to state courts for evictions. Yet, if because of the Eviction Moratorium and the lack of funds it creates an owner of a property is foreclosed upon, the banks can evict the same tenant!

103. CDC also does not explain why other remedial measures are inadequate, such as providing vaccines to anyone who might be forced into congregate housing arrangements as the result of an eviction.

104. The evidence on which CDC relies fails to support CDC's Order, and it is thus arbitrary and capricious.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, or promulgation or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT III: VIOLATION OF THE RIGHT OF ACCESS TO COURTS UNDER THE U.S. CONSTITUTION—THE ORDER UNLAWFULLY IS DENYING PLAINTIFFS ACCESS TO THEIR ONLY LAWFUL MEANS OF EVICTING DELINQUENT TENANTS

105.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

106.   The Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fifth Amendment Due Process Clause collectively provide a federal constitutional right of access to courts. *Christopher v. Harbury*, 536 U.S. 403, 415, 415 n.12 (2002).

107.   No governmental actor may systematically frustrate a plaintiff "in preparing and filing suits" by foreclosing a particular type of relief. *Id*. at 413.

108.   In virtually every state where plaintiffs reside or hold property and in virtually every state in the nation, the state requires a landlord to use its processes and not self help to repossess his or her property.

109.   In Iowa, for example, a home provider can evict a tenant for non-payment of rent upon three days' notice to the tenant. IA Code § 562A.27. The home provider must pay an $85 filing fee and serve the tenant at least three days prior to the eviction hearing. IA Code § 648.5. A hearing must be held within 15 days of the filing of the Complaint. *Id*. If the Court issues a writ of eviction, the tenant receives an order to leave within 3 days; subsequent to that, tenants are forcibly removed by the sheriff. *Id*. § 648.22. Iowa, like all but perhaps two states,

35

prohibits "self help" evictions by a forcible entry and detainer statute. *Id.* § 648.1.

It does this specifically to deter the violence that occurred in the previous regime.

*Captial Fund 85 Ltd. Partnership v. Priority Systems, LLC,* 670 N.W.2d 154, 159

(Iowa 2003).

110.    Similarly, an unlawful detainer action is a landlord's *sole* means of

reacquiring possession of his residential property in Virginia. A sheriff must enforce

a writ of eviction. *See* Va. Code § 8.01-470 (writs of eviction generally). A

residential landlord is forbidden from taking possession of his own property. Va.

Code § 55.1-1252. Instead, "[i]f a landlord unlawfully removes or excludes a tenant

from the premises … the *tenant* may obtain an order from a general district court to

recover possession, require the landlord to resume any such interrupted essential

service, or terminate the rental agreement and, in any case, recover the actual

damages sustained by him and reasonable attorney fees." Va. Code. § 55.1-1243(a).

111.    North Carolina courts also provide a landlord's sole means of eviction

and regaining possession of his or her property from a tenant who has breached a

lease: "It is the public policy of the State of North Carolina, in order to maintain the

public peace, that a residential tenant shall be evicted, dispossessed or otherwise

constructively or actually removed from his dwelling unit only in accordance with

the procedure prescribed in Article 3 or Article 7 of this Chapter." N.C. Gen. Stat.

§ 42-25.6; *see also id.* § 1-313 ("The execution must be directed to the sheriff[.]").

112.   In South Carolina, a landlord must also utilize a court eviction process, and obtain a writ of ejectment from a judge. *See* S.C. Code § 27-40-710. The writ must be executed by a state official, and a landlord may not attempt to evict a tenant through self help. S.C. Code § 27-40-760. A landlord is also liable to a tenant for the greater of three months' rent or twice actual damages for an unlawful ouster if he attempts to evict a tenant outside the court process. S.C. Code § 27-40-660.

113.   Georgia also requires residential landlords to use court eviction proceedings, and only permits eviction by a sheriff, constable or marshal's execution of a writ of possession.  *See* Ga. Code § 44-7-55(d).  Without being issued such a writ, a landlord may not retake possession of her residential property. *See id.* A landlord who resorts to self-help evictions faces criminal punishment.  *See* Ga. Code § 44-7-14.1 ("Unlawful to suspend furnishing of utilities to tenant until final disposition of dispossessory proceeding.").

114.   Indeed, in a majority, if not all the jurisdictions across the United States (including all of those in which Plaintiffs reside), residential home providers must follow state eviction proceedings in order to lawfully oust tenants for nonpayment of rent.

115.   Plaintiffs are all entitled to obtain writs pursuant to state law to regain possession of their properties for nonpayment of rent.

116.    Plaintiffs' tenants currently owe unpaid rent and, except for those states that have a current state eviction moratorium backed up by the CDC Order, have no real defenses in state court other than the CDC Order.

117.    By operation of the CDC Order, Plaintiffs are unable to obtain writs of eviction pursuant to the legal processes set out by their respective state laws.

118.    So important are state-court actions in areas of primary and traditional state responsibility within our federalist system that the Supreme Court of the United States has crafted abstention doctrines so that federal courts do not interfere with state court proceedings *even when federal courts have jurisdiction*. *Younger v. Harris,* 401 U.S. 37 (1971); *Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (explaining that "*Younger v. Harris* [] and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances").

119.    The Defendants' action here is without any federal authority and fails to show even the deference *constitutionally defined branches* of the Government accord state court proceedings.

120.    Because of Defendants' unconstitutional order, Plaintiffs have no ability to legally oust their tenants for nonpayment of rent.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and

prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

### COUNT IV: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE—THE CDC EVICTION-MORATORIUM ORDER CANNOT BE THE SUPREME LAW OF THE LAND BECAUSE IT IS NOT A LAW ADOPTED PURSUANT TO THE CONSTITUTION

121. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

122. Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; … shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

123. The Supremacy Clause grants "supreme" status only to the "*Laws* of the United States" that are "made in Pursuance" of the Constitution. *Id.* (emphasis added). An administrative order issued by a single federal bureaucrat without statutory authority fails to satisfy this explicit restriction, and it thus cannot be the "supreme law of the land" and it cannot bind "the judges in every state."

124. "[A]n agency literally has no power to act, let alone to pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *New York v. FERC*, 535 U.S. 1, 18 (2002).

39

125. "[P]reemption takes place only when and if the agency is acting within the scope of its congressionally delegated authority." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

126. The Supremacy Clause grants "supreme" status only to the "Laws of the United States which shall be made *in Pursuance thereof*," *i.e.* in pursuance of "This Constitution." U.S. Const. Art. VI, cl. 2 (emphasis added).

127. The conditional nature of the Supremacy Clause accords supremacy to federal statutes or regulations made "in Pursuance of" the Constitution.

128. CDC has not identified any Act of Congress that confers upon it the power to impose a halt on residential evictions, nor is there one.

129. CDC has not identified any Act of Congress that shows it is acting within the scope of some congressionally delegated authority to impose eviction moratoriums across the United States, nor is there one.

130. Indeed, Section 4024 of the CARES Act, which imposed a temporary moratorium on certain evictions, contained no delegation of authority to any agency, much less CDC, and even then it applied only to certain federally backed housing.

131. The relevant statute "authorizes the Director to undertake certain specifically enumerated acts 'and other measures, as in [her] judgment may be necessary.' But those 'other measures' are limited by the specific examples listed. They provide the intelligible principle without which Congress' delegation of

40

authority in this instance would be too broad to withstand Constitutional scrutiny." *Tiger Lily*, Slip op. at 16.

132. The weaker the link between relevant federal statutes and the CDC Order, the weaker is CDC's ability to invoke the Supremacy Clause to deprive Plaintiffs of their right to state-court eviction process.

133. Relatedly, the closer to a State's core traditional functions and core interests an issue is, such as regulating real property within its borders and managing its own state-court processes, the clearer any exercise of the Supremacy Clause must be. *See Terkel*, 2021 WL 742877, at *8-9 (noting that CDC's findings concern "the police power" and criminalize "an area of traditional state concern: remedies protecting property rights").

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT V: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE AND TENTH AMENDMENT—THE CDC EVICTION-MORATORIUM ORDER DOES NOT VALIDLY PRE-EMPT STATE LAW

134. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

41

135. Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

136. The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

137. The relevant statute, 42 U.S.C. § 264(a), authorizes CDC to make and enforce only such regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

138. The relevant regulation, 42 C.F.R. § 70.2, also authorizes CDC only to "take measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

139. Nothing in the relevant statutes or regulations purports to give CDC the authority to order an eviction moratorium that preempts state landlord-tenant law.

140.  Nothing in the relevant statutes or regulations purports to give CDC the authority to preempt the Contracts Clause of Article I, Section 10 of the United States Constitution, the Contracts Clauses of the state constitutions, or otherwise preempt state law protecting from governmental impairment the obligations of private contracts that are in force.

141.  Nothing in the relevant statutes or regulations gives CDC the authority to order a nationwide moratorium "to temporarily halt residential evictions to prevent the further spread of COVID-19," CDC Order, 85 Fed. Reg. at 55292, because CDC's authority is confined to undertaking measures providing for "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 U.S.C. § 264(a); 42 C.F.R. § 70.2.

142.  Although "state laws can be pre-empted by federal regulations as well as by federal statutes," *Hillsborough Cty., Fla. v. Automated Medical Lab, Inc.*, 471 U.S. 707, 713 (1985), the relevant statute contains a savings clause, which states: "Nothing in this section or section 266 of this title, or the regulations promulgated under such sections, may be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States), except to the extent that such a provision conflicts with an exercise of Federal authority under this section or section 266 of this title." 42 U.S.C. § 264(e).

43

143.   The savings clause of 42 U.S.C. § 264(e) states that 42 U.S.C. § 264(a) and 42 C.F.R. § 70.2 cannot "be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States)."   In other words, the CDC is statutorily expressly deauthorized from issuing orders such as the Order that would supersede state landlord-tenant law, or state laws forbidding impairment of contracts.

144.   The relevant state landlord-tenant laws and laws relating to non-impairment of contracts do not conflict with CDC's authority to regulate "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings."  42 U.S.C. § 264(a).

145.   Landlord-tenant law and law relating to non-impairment of contracts "has long been regarded as a virtually exclusive province of the States" under the Tenth Amendment upon which the federal government cannot intrude.  *Sosna v. Iowa*, 419 U.S. 393, 404 (1975); *see also Terkel*, 2021 WL 742877, at *8-9 (reasoning that the CDC Order "treads into an area of traditional state concern: remedies protecting property rights").   The CDC Order displaces inherent state authority over residential evictions and therefore violates the Tenth Amendment.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and

44

prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

### COUNT VI: VIOLATION OF U.S. CONSTITUTION'S TENTH AMENDMENT—THE CDC EVICTION-MORATORIUM ORDER UNCONSTITUTIONALLY COMMANDEERS STATE RESOURCES AND STATE OFFICERS TO ACHIEVE FEDERAL POLICY OBJECTIVES OR EXECUTE FEDERAL LAWS

146. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

147. The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

148. Under the Tenth Amendment and the anti-commandeering doctrine, CDC cannot commandeer state resources to achieve federal policy objectives or commandeer state officers to execute federal laws. CDC's Order impermissibly commandeers state courts and state officers to apply, enforce, and implement an unconstitutional federal law. *New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S. 898 (1997).

149. CDC cannot order state courts and relevant state actors not to process summary evictions. Home providers, like Plaintiffs, who rely on state process, run the risk of a federal prosecution for doing so. Plaintiffs run the risk of being fined

45

from \$100,000 to \$500,000 and sentenced to one year in prison for invoking and utilizing relevant state laws. *See* CDC Order, 85 Fed. Reg. at 55296.

150.   But neither Congress nor CDC may "compel the States to … administer a federal regulatory program." *New York v. United States*, 504 U.S. at 188.   Neither Congress nor CDC may "halt" pending or forthcoming state adjudicatory proceedings.   CDC Order, 85 Fed. Reg. at 55296.   And neither Congress nor CDC may modify state judicial processes by dictating that a declaration executed by a tenant shall be adequate proof or otherwise suffice to halt or suspend the judicial eviction action.   *Id.* at 55292–93, 55297.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT VII: VIOLATION OF U.S. CONSTITUTION ART I, § 1—THE CDC ORDER IS AN INVALID EXERCISE OF LEGISLATIVE POWER

151.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

152.   Article I, § 1 of the U.S. Constitution states, "*All* legislative Powers herein granted shall be vested in a Congress of the United States." (Emphasis added). The grant of "[a]ll legislative Powers" to Congress in the Vesting Clause means that

46

Congress may not divest "powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. 1, 42-43 (1825).

153.  Whether federal legislation effects a permissible or prohibited delegation of legislative powers—and thus violates the Article I, § 1 Vesting Clause—is determined based on whether the legislation provides "an intelligible principle" to which an administering agency is directed to conform when carrying out its functions under the legislation. *Mistretta v. United States*, 488 U.S. 361, 372 (1989)*.  If the law fails to provide a guiding principle of that sort but instead delegates to the agency authority to establish its own policies, the legislation is invalid because it violates the Vesting Clause. *Id*.

154.  As interpreted by CDC, 42 U.S.C. § 264(a) fails to set forth any "intelligible principle" to which CDC is directed to conform.  *See Tiger Lily*, Slip op. at 16 (reasoning that CDC's interpretation of § 264(a) reads out the statute's intelligible principle).

155.  Citing § 264(a), the CDC Order imposes a nationwide moratorium on certain residential evictions for non-payment of rent based on CDC's sole judgment that a moratorium is necessary to curb "the introduction, transmission, or spread of communicable diseases."  But if that finding is sufficient to justify the moratorium, then § 264(a) imposes no discernible limits on CDC's regulatory authority whenever virus or disease is being spread among humans in the United States.

47

156.   Alternatively, if § 264(a) does supply a sufficient intelligible principle under current interpretation, then the non-delegation doctrine must be re-examined so as to adhere to the proper limits contained in the Vesting Clause of Article I, § 1.

157.   As interpreted by the CDC Order, § 264(a) would also authorize CDC to prohibit all citizens from attending church services, assembling for the purpose of expressing their political views, or even leaving their own homes.  It is doubtful such measures could pass constitutional muster if adopted by Congress itself; but it is beyond dispute that such measures constitute the sorts of policy decisions that the Constitution reserves to Congress alone in its role as the Nation's exclusive repository of legislative power.

158.   Because § 264(a), as interpreted by CDC, fails to include an intelligible principle that imposes limits on CDC's alleged regulatory authority, § 264(a) violates the Article I, § 1 Vesting Clause and is thus invalid as applied.

159.   Because § 264(a) is unconstitutional as applied here, CDC lacks any statutory authority to adopt the Order.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

48

## COUNT VIII: UNLAWFUL SUSPENSION OF LAW—NEITHER STATUTE NOR CONSTITUTION AUTHORIZES CDC TO WAIVE, DISPENSE WITH, OR SUSPEND STATE EVICTION LAWS

160.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

161.   Evictions and the laws governing when and under what circumstances a property owner can regain possession of his or her property are a function of the police power of the several states. *Cf. Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 247 (1922) (considering the New York legislature's authority to enact emergency housing laws under the state's police power). In the plaintiffs' states, like most other states, a landlord's rights and remedies upon a material breach of a rental agreement, including the right to an eviction and the recovery of possession based on nonpayment of rent, are governed by a comprehensive statutory scheme. *See, e.g.*, Iowa Code § 648 *et seq.*; Va. Code §§ 8.01-470, 55.1-1245 *et seq.*; N.C. Gen. Stat. §§ 1-313, 42-1 *et seq.*

162.   CDC's Order purports to waive or suspend the duly enacted laws that govern evictions in the several states.

163.   CDC has no authority to waive, dispense with, or suspend duly enacted state laws; nor does the Executive Branch more generally.  *See Matthews v. Zane's Lessee*, 9 U.S. 92, 98 (1809) (Marshall, C.J.) ("The president cannot dispense with the law, nor suspend its operation."); *Baker v. Carr*, 369 U.S. 186, 244 n.2 (1962)

49

("No tribunal or department in our system of governments ever can be lawfully authorized to dispense with the laws, like some of the tyrannical Stuarts, or to repeal, or abolish, or suspend the whole body of them[.]") (quoting *Luther v. Borden*, 48 U.S. 1, 69 (1849) (Woodbury, J., dissenting)).

164. To the contrary, the United States Constitution forbids the Executive Branch from suspending or dispensing with the law.

165. The separation of powers enshrined in our Constitution prevents suspensing or dispensing with the law through executive action, as it would effect a merger of the executive and legislative powers. *See* Philip Hamburger, Nat'l Rev., *Are Health-Care Waivers Unconstitutional?* (Feb. 8, 2011), *available* at https://www.nationalreview.com/2011/02/are-health-care-waiversunconstitutional-philip-hamburger ("The power to dispense with the laws had no place in a constitution that divided the active power of government into executive and legislative powers."). Suspension of laws by the Executive Branch is "a power exercised not through and under the law, but above it." *Id*.

166. The Founder's placement of the Suspension Clause (pertaining to *habeas corpus*) in Article I reflects that the U.S. Constitution continued the English common-law tradition of vesting the suspension power solely in the Legislative Branch. *See* Philip Hamburger, *Beyond Protection*, 109 COLUM. L. REV. 1823, 1919 (2009); Amanda L. Tyler, *Habeas Corpus in Wartime: From the Tower of*

50

*London to Guantanamo Bay* (2017) (chronicling the original meaning of the Suspension Clause).  The limited exception for the suspension of habeas corpus "in Cases of Rebellion or Invasion" when "the public Safety may require it" proves the more general rule that duly enacted laws may not be suspended during an emergency that is neither a rebellion nor an invasion, even by Congress.  U.S. Cont., art. I, § 9, cl. 2.

167.   And in contrast to the legislature's suspension authority, the executive "could not, even during an emergency, seize property" or "constrain the natural liberty of persons who were within the protection of the law, unless [the executive] had legislative authorization."  Hamburger, *Beyond Protection*, 109 COLUM. L. REV. at 1919.

168.   CDC has not identified any Act of Congress that delegated authority to impose an eviction moratorium across the United States, nor does one exist. Section 264(a) authorizes CDC only to make and enforce regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

169.   With no applicable grant of statutory authority to suspend laws, CDC has no authority to do anything with respect to the several states' comprehensive

laws. *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 425 (1934) ("Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.").

170. Because CDC could not lawfully waive the application of state laws governing evictions, the Order is void *ab initio* and must fail.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT IX: THE CDC ORDER EXCEEDS THE LIMITATIONS OF ARTICLE I, SECTION 8 OF THE UNITED STATES CONSTITUTION AND WOULD BE UNLAWFUL IF ENACTED BY THE CONGRESS AND SO CANNOT BE PROMULGATED BY ANY DEFENDANT

171. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

172. The United States Constitution simply does not give the federal government the power to deny access to state courts for adjudication of claims to privately owned real property within that state. "The Constitution creates a Federal Government of enumerated powers." *United States v. Lopez*, 514 U.S. 549, 552 (1995). The power CDC claims here cannot be found in the Constitution.

52

173.    Article I, Section 8 of the Constitution explicitly enumerates 17 powers vested in Congress and, thus, to the federal government.  It also supplies the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."  U.S. Const. art. I, sec. 8.

174.    The power to modify private residential lease agreements between home providers and tenants, and the power to bar recourse to state courts to adjudicate disputes over residential lease contracts and real property within the several states is neither explicitly nor implicitly among the federal government's enumerated powers.  *See* U.S. Const. art. I, sec. 8.  Nor is such power encompassed in "[t]he executive Power" referenced in Article II of the United States Constitution.  The federal government simply does not have that power.

175.    The Constitution does not vest the federal government with a general police power as the states have.  *Cf. Siegel*, 258 U.S. at 247 (considering the New York legislature's authority to enact emergency housing laws under the state's police power); *see also Terkel*, 2021 WL 742877, at *8-9 (explaining that the findings on which CDC relied and the scope of the CDC Order concern the states' police power).  That is why CDC has traditionally claimed authority to stem the spread of disease

53

under the Commerce Clause and likely why the CDC Order purports to regulate the spread of Covid-19 across state lines.

176.  The Commerce Clause grants Congress authority "[t]o regulate Commerce … among the several States." U.S. Const. art. I, sec. 8, cl. 3.  There is no trade in communicable diseases.

177.  The Necessary and Proper Clause grants Congress authority to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers [the 17 enumerated powers], and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

178.  But the CDC Order cannot be justified under the Commerce Clause, the Necessary and Proper Clause, or the two clauses combined.  *See Terkel*, 2021 WL 742877, at *8-9 (holding that the CDC Order violates the Commerce Clause, in part, because any impact on interstate commerce is incidental).

179.  The commerce power generally falls within three broad categories: 1) regulation of the channels of interstate commerce; 2) regulation of the instrumentalities of interstate commerce; and 3) regulation of activities that substantially affect interstate commerce.  *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005).

54

180.    Courts determine the substantial effects test by relying not merely on the Commerce Clause, but upon the Necessary and Proper Clause as well.  *See id.* at 33-42 (2005) (Scalia, J., concurring).

181.    Regulating the eviction of residential tenants through state courts is not the regulation of a channel nor an instrumentality of interstate commerce.  Indeed, it touches on core state interests: real property within their borders and the functioning and authority of their own state courts.

182.    The eviction of tenants from private property does not substantially affect interstate commerce, especially where those tenants still owe back rent to their former home providers, and the CDC Order provides no evidence that it does.

183.    The CDC Order provides no evidence or findings supporting any claim that removing individuals who are unlawfully present from private property will have a substantial impact on the national economy.

184.    Nor is the Eviction-Moratorium Order part of some broader economic regulatory scheme that would be undercut if the federal government were not permitted to stop evictions.  There is no broader scheme.  This is simply an *ad hoc* measure beyond CDC's purview and beyond the authority of the federal government.

185.    There is currently no federal prohibition on those exposed to Covid-19 moving across state lines.

55

186.   There are no findings or evidence in the CDC Order that suggest a federal restriction on individuals exposed to Covid-19 moving across state lines would be undercut if the federal government could not prevent evictions from private property.

187.   The CDC Order is not even a regulation of economic activity.  In fact, it seems designed *not* to regulate economic activity.  While it is extremely damaging to plaintiffs, the CDC relies on the fiction that no harm accrues to home providers because of the "availability" of money damages.

188.   The CDC Order by its terms does not alter the commercial obligations of tenants, such as the payment of rent.  In fact, CDC makes clear that the money is still owed.  CDC has simply removed the ancient right of eviction and deprived Plaintiffs and other home providers of their right to collect the money owed to them for the foreseeable future—and interfered with their right to mitigate damages by re-letting the property to a new tenant for the duration of the former lease.

189.   The CDC Order punishes home providers for pursuing legal proceedings under state law and for exercising their rights to remove unlawfully present persons from their property.

190.   The CDC Order does not contain a limitation designed to keep it within the Constitution, such as limiting its operation to those living in federally subsidized

housing, those traveling in interstate commerce, or to those who have been exposed to Covid-19.

191.  The CDC Order instead, without constitutional authority, expands federal authority into areas of core state power and interest by regulating private property rights, private contracts, and the right to invoke traditional state legal proceedings.

192.  The CDC Order simply amounts to "rent seeking" whereby the government rewards one (more numerous) party with the resources of another (less numerous and therefore less powerful) party.

193.  The CDC Order therefore attempts to create *ex nihilo*, for the first time in our history, a tyrannical federal power nowhere provided in the U.S. Constitution nor in any of its (non-fancifully construed) provisions.

WHEREFORE, Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT X: CLASS ACTION ALLEGATIONS

194.  Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

195.    Plaintiffs and each of them bring this action as representatives of a class pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(2) on behalf of all home providers who are injured by the CDC Order because unable to evict their non-paying, defaulting tenants under state judicial processes.

196.    There are two proposed classes represented by Plaintiffs.  First, all those home providers with properties in states that have no eviction moratoriums of their own (the "No State Moratorium Class").  Second, the home providers in states that have a "more restrictive" eviction moratorium in which the CDC Order serves as a backstop preventing any termination of a state eviction moratorium from having practical effect (the "Backstop Class").  These are the two classes of property owners affected by the CDC Order.

197.    Plaintiffs are adequate representatives of the two classes because Plaintiffs belong to the class as property owners whose tenants are in default of their rent obligations and who wish to have them evicted in state court but cannot because of the CDC's unlawful action.

198.    The class includes thousands of such property owners across the country.  Indeed, even without NAA and NARPM, the individual plaintiffs in this suit make up the numerosity requirement by themselves.

199.    The class is so numerous that joinder of all members is impractical. The CDC Order has shut down State processes for eviction across the nation.  There

are thousands of home providers affected by it. Only an injunctive class as here proposed can shut down this unlawful federal action and return the class to its rights.

200. The common questions of law and fact that unite the class include, but are not limited to:

    a.  whether the CDC Order is unconstitutional;

    b.  whether the CDC Order violates the APA;

    c.  whether the CDC Order is authorized by its purported authorizing statute or any other law;

    d.  whether the CDC Order exceeds power granted the federal agency;

    e.  whether the CDC Order is arbitrary and capricious and contrary to law.

    f.  whether the CDC Order exceeds Congress's power under Article I of the United States Constitution.

    g.  whether the CDC Order exceeds the Federal Government's power under the U.S. Constitution.

201. The claims brought by Plaintiffs are typical of the class, and the Plaintiffs' representatives will fairly and adequately protect the interests of the class.

202. The relief sought is appropriate for the class as a whole, as Plaintiffs demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry,

promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate. This relief would equally impact the entire class.

WHEREFORE, Plaintiffs, on every count, demand declaratory judgment against CDC setting aside and invalidating the CDC Order; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate, including but not limited to attorneys' fees and costs.

March 17, 2021

Respectfully,

/s/_____
John J. Vecchione
(*pro hac vice* forth coming)
Senior Litigation Counsel
Jared McClain (*pro hac vice* forthcoming)
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
John.Vecchione@ncla.legal
Jared.McClain@ncla.legal
(202) 918-6902
*Admitted Pro Hac Vice*
*Counsel for Plaintiffs*

/s/Alan R. Ostergren_____
The Kirkwood Institute, Inc.
Alan R. Ostergren

60

*President and Chief Counsel*
500 Locust Street, Suite 199
Des Moines, Iowa 50309
alan.ostergren@kirkwoodinstitute.org
(515) 207-0134