Mr. Asa Mossman    :
1013 19th St. SE     :
Cedar Rapids, IA 52403   :
           :
           :
      &amp;     :
           :
Ms. Hella Shriver     :
d/b/a HS Properties    :
PO Box 313       :
LoneJack, MO 64070    :
           :   CASE NO.: 1:21-cv-0028-CJW-MAR
      &amp;     :
           :   FIRST AMENDED COMPLAINT
Mr. Winston Tracy Mills   :
1643 B Savannah Hwy. Suite 319 :
Charleston, SC 29407    :
           :
           :
      &amp;     :
           :
Steve and Susan Harrison   :
Equity Trust Co.      :
112 Millburgh Ln.     :
Goose Creek, SC 29445   :
           :
      &amp;     :
           :
Harold and Sarah Schoeffler  :
Real Estate Holdings Co., LLC  :
3502 E. Simcoe St.     :
Lafayette, LA 70501    :
           :
      &amp;     :
           :
Ms. Helen Fitzgerald    :
19 Riverside Dr.      :
Dover, NH 03820     :

                              &            :
                                               :

Emanuel and Jessica John      :
561 S. Park St.                :
Casper, WY 82601         :
                                               :
                              &            :
                                               :

Butler Plantations, LLC     :
3405 Stonewall St.           :
Brunswick, GA 31520     :
                                               :
                              &            :
                                               :

Chris and Tomika Allen     :
5395 Salem Springs Dr.    :
Stonecrest, GA 30038    :
                                               :
                              &            :
                                               :

Grant J. Anderson        :
1001 Churchman Ave.    :
Indianapolis, IN 46203    :
                                             :
                              &            :
                                               :

Ms. Shraddha Kanak     :
7M Apartments LLC      :
4731 N. Pine Hills Rd.     :
Orlando, FL 32808        :
                                             :
                              &            :
                                               :

7M Real Estate LLC      :
1625 Mercy Dr.              :
Orlando, FL 32808        :
                                             :
                              &            :
                                               :
                                             :

Mr. Richard McConkie                  :
302 Ihei                              :
Chatan, Okinawa                       :
Japan 904-0102                        :
                                      :
     &                                  :
                                      :
Titans Creek LLC                      :
535 Edna Dr.                          :
Columbia, KY 42728                    :
                                      :
     &                                  :
                                      :
Ms. Regina Tillman                    :
19303 Kemp Ave.                       :
Carson, CA 90746                      :
                                      :
     &                                  :
                                      :
Dennis R. and Roseanne D. Norton      :
151 Christina Maria Way               :
Cedar Point, NC 28584                 :
                                      :
     &                                  :
                                      :
The National Apartment Association    :
4300 Wilson Blvd., Suite 800          :
Arlington, VA 22203                   :
                                      :
     &                                  :
                                      :
National Association of Residential   :
Property Managers®                    :
1403 Greenbrier Parkway, Suite 150    :
Chesapeake, VA 23320                  :
                                      :
     &                                  :
                                      :

Millstone Properties, Inc.　　　　　:
53 W. Jackson Blvd., Ste. 1734　　:
Chicago, IL 60604　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　&　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
Mr. Jason Sudia　　　　　　　　　:
360 Fairview Ave.　　　　　　　　:
Colonia, NJ 07067　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　&　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
Amanda Fletcher　　　　　　　　　:
933 Fernwood Rd.　　　　　　　　:
Moorestown, NJ 08507　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　&　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
CFH Properties LLC　　　　　　　:
P.O. Box 60095　　　　　　　　　:
Seattle, WA 98160　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiffs,　　　:
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
U.S. Centers for Disease Control and :
Prevention　　　　　　　　　　　:
1600 Clifton Rd.　　　　　　　　　:
Atlanta, GA 30329　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　&　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
Rochelle P. Walensky,　　　　　　:
Director of the U.S. Centers for　　:
Disease Control and Prevention　　:
1600 Clifton Rd.　　　　　　　　　:
Atlanta, GA 30329　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　&　　　　　　　　　　:

Sherri A. Berger,                                                :
in her official capacity as                                      :
Acting Chief of Staff for the                                    :
U.S. Centers for Disease Control                                 :
and Prevention                                                   :
1600 Clifton Rd.                                                 :
Atlanta, GA 30329                                                :
                                                                 :
                                                                                            & :
                                                                 :
Xavier Becerra,                                                  :
in his official capacity as                                      :
Secretary of the U.S. Department                                 :
of Health and Human Services                                     :
200 Independence Ave. SW                                         :
Washington, DC 20201                                             :
                                                                 :
&                                                                :
                                                                 :
U.S. Department of Health and                                    :
Human Services                                                   :
200 Independence Ave. SW                                         :
Washington, DC 20201                                             :
                                                                 :
&                                                                :
                                                                 :
The United States of America,                                   :
Merrick Garland,                                                 :
U.S. Attorney General                                            :
950 Pennsylvania Ave. NW                                         :
Washington, DC 20530                                             :
                                                                 :
                                                                 :
        Defendants.                                          :

## FIRST AMENDED COMPLAINT AND CLASS ACTION

When the individual Plaintiffs in this action, and the members of Plaintiffs National Apartment Association ("NAA") and the National Association of Residential Property Managers ("NARPM"), rented their respective properties, they expected, and had every reason to expect, that their tenants would uphold their end of the contracts and pay their rent. They also expected, and had every reason to expect, that if their tenants did not pay their rent, that they could resort to the law and the court system to evict their tenants so that they could regain possession of their property and let it to tenants who would pay rent.  The laws of all fifty states allowed the remedy of eviction through state processes and provided it as a substitute to self-help, which had historically led to violence and other problems.

Plaintiffs upheld and continue to uphold their end of the bargain.  They provide habitable homes to their tenants and continue to pay for maintenance, often utilities, and other expenses. When their tenants breached their respective agreements, Plaintiffs should have been able to follow the lawful processes laid down by state law for retaking possession of their homes.  They cannot do that, however, because of an order, completely without lawful authority or precedent, issued by the administrative agency the U.S. Centers for Disease Control and Prevention ("CDC").

Plaintiffs have been repeatedly, strategically, and now deliberately targeted by unelected agency bureaucrats in the federal government who have no authority over housing let alone over state courts. Plaintiffs failed to anticipate that CDC, a federal agency, would issue (and extend repeatedly) a sweeping unilateral order suspending the action of *state* courts under the flimsy premise that doing so was "necessary" to control the spread of Covid-19. CDC's actions are not authorized by statute or regulation. But even if they were, those actions are beyond the enumerated powers of Congress, unprecedented in our history, and an affront to core constitutional limits on federal power. If allowed, the Order would abrogate the right to access the courts, violate limits on the Supremacy Clause, exceed the power delegated the CDC by Congress or offend the non-delegation doctrine, and traduce anti-commandeering principles. CDC's effort to seize control of legal regimes in a traditional area of state law on such an insupportable basis must be rejected.

## PARTIES

1. Plaintiff Asa Mossman is a natural person and a resident of Cedar Rapids, Iowa. He is a home provider with property in Iowa and had a tenant in default.

2.     Plaintiff Hella Shriver a resident of Jackson County, Missouri, is a natural person, doing business as HS Properties, through which she rents a property in Missouri.  She has a tenant in default.

3.     Plaintiff Mr. Winston Tracy Mills is a natural person and a resident of South Carolina.  He rents property in South Carolina and had a tenant in default until July 20, 2021.  Plaintiffs were able to regain possession of their property, which the tenant had damaged while in default.

4.     Plaintiffs Steve and Susan Harrison are natural persons, spouses, and co-owners of an IRA managed by Equity Trust Co., organized under the laws of South Carolina.  They rent property in South Carolina and have a tenant in default.

5.     Plaintiff Harold and Sarah Schoeffler Real Estate Holdings Co., LLC is a limited liability company ("LLC") organized under the laws of Louisiana; its principals are spouses Harold and Sarah Schoeffler.  Its tenant is in default.

6.     Plaintiff Helen Fitzgerald is a natural person living in New Hampshire. She has a rental property in New Hampshire, and the tenant is in default.

7.     Plaintiffs Emanuel and Jessica John are natural persons and spouses in Wyoming.  They own a rental property in Louisiana and have a tenant in default.

8.     Butler Plantations, LLC is an LLC organized under the laws of Georgia. Its principal is the natural person Rhett E. Butler.  It owns rental properties in Georgia with tenants currently in default.

9.     Plaintiffs Chris and Tomika Allen are natural persons, spouses, and residents of the State of Georgia.  They own rental property in Georgia and have a tenant in default.

10.     Plaintiff Grant J. Anderson is a natural person and resident of Indiana. He owns rental property in Indiana with a tenant in default.

11.     Plaintiff Shraddha Kanak is a natural person residing in Florida and the principal of Plaintiffs 7M Apartments LLC and 7m Real Estate LLC both controlling rental apartment buildings in Orlando, Florida.  Both apartment buildings have dozens of tenants in default.  Plaintiffs were able to evict several tenants between July 31, 2021, and when CDC extended its moratorium on August 3, but the local court has stayed any remaining writs of possession based on the renewed eviction moratorium.

12.     Plaintiff Mr. Richard McConkie is an American citizen and natural person who normally resides in Virginia.  He is currently a resident of Okinawa, Japan working for the American military presence there.  He rents out his house in

Virginia to a tenant who is currently in default. His tenant has caused—and continues to cause— extensive damage to the property during the tenancy, which Mr. McConkie will have to repair once he's finally able to evict the tenant.

13.     Plaintiff Titans Creek, LLC is a Kentucky LLC, the principals of which are natural persons including Ms. Kendra Kessinger, also a resident of Kentucky. Titans Creek rents residential property in Kentucky and currently has 13 tenants in default.

14.     Regina Tillman is a natural person residing in California with a rental property in Decatur, Georgia, whose tenant was in default until late March 2021, at which point she regained possession of her property.

15.     Plaintiffs Dennis and Roseanne D. Norton are natural persons and spouses in North Carolina. They own ten rental units in North Carolina, two of which have tenants in default.

16.     Plaintiff National Apartment Association ("NAA") is a trade association for owners and managers of rental housing that is comprised of 157 state and local affiliated apartment associations, and over 82,600 members managing more than 9.7 million rental homes throughout the United States, including Iowa, as well as Canada and the United Kingdom. Members of NAA have tenants who are in default on their leases.

17.     Plaintiff National Association of Residential Property Managers®

("NARPM") is a trade association of those who rent and maintain rental properties throughout the United States, including in Iowa. They have members who have tenants in default.

18.     Plaintiff Mr. Jason Sudia is a natural person and a resident of New Jersey. He owns a rental property and has a tenant in default.

19.     Millstone Properties, Inc. is an Illinois corporation whose President is Dan Wagenmaker. It owns rental property in Chicago, Illinois, which has a tenant in default. Plaintiffs were able to evict their tenant and regain possession of their property on July 21, 2021.

20.     Plaintiff Amanda Fletcher is a natural person and a resident of New Jersey. She owns rental property in New Jersey with a tenant in default. Ms. Fletcher's tenant, empowered by Defendants' order, has offered to vacate the home in exchange for $3,700 plus Ms. Fletcher forgiving over $12,000 in past due rent.

21.     Plaintiff CFH Properties LLC is an LLC formed under the laws of Washington State and registered as a foreign corporation in Oregon. The principals are spouses Colin L. Hooks and Francisca Nerida-Hooks, natural persons living in Washington State. The LLC owns rental property in Oregon with a tenant who was

in default until Plaintiffs were able to evict in April 2021 after police were called on the tenant 31 times for different violations of the law.

22.     Defendant CDC is an agency of the United States situated within the U.S. Department of Health and Human Services ("HHS") and headquartered in Atlanta, Georgia.

23.     Defendant Rochelle P. Walenksy is the Director of the CDC and is sued in her official capacity.

24.     Defendant Nina B. Witkofsky is the Acting Chief of Staff for CDC and is the agency head responsible for the challenged agency action.  She is sued in her official capacity.

25.     Defendant HHS is an agency of the United States.

26.     Defendant Acting Secretary Norris Cochran is the acting agency head of the HHS and is sued in his official capacity.

27.     The United States of America is the Government of the United States organized under the Constitution of the United States with service effected, when the original Complaint and Class Action was filed, upon Merrick Garland the Attorney General of the United States, as well as the U.S. Attorney for the Northern District of Iowa.

## JURISDICTION AND VENUE

28.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.  5 U.S.C. §§ 702 & 703 provides a cause of action for Plaintiffs in this case.

29.     This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

30.     Venue for this action properly lies in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(b)(1), (2) because the Defendants are present in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

### A. The Eviction Moratorium

31.     On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, P.L. 116-316, which included in Section 4024 a limited and temporary moratorium on evictions for certain types of federally backed housing that expired on July 24, 2020.

32.     On September 1, 2020, Defendant Acting Chief Witkofsky issued a nationwide order *not* limited to certain types of federally backed housing.  It was

entitled, "*Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19*" (the "Eviction Moratorium" or the "CDC Order").

33. The nationwide CDC Order became effective upon publication in the Federal Register, which occurred on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020), *available at* https://bit.ly/2XuTzfH.

34. The CDC Order provided, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id*.

35. The CDC Order, by its terms, was not effective so long as a local jurisdiction applied more onerous eviction restrictions. *Id*. In reality, however, the CDC order stood and stands as a backstop to all similar state eviction moratoriums. Any move to lift state moratoriums by governors, legislatures, courts, or other responsible state bodies would be met with significant resistance (whether in judicial or political venues), and such repeal would still fail to allow home providers access to their properties because of the CDC Order. In addition, the very existence of the federal Eviction Moratorium had the natural consequence of emboldening and causing tenants to cease paying rent to the Plaintiffs. Regardless of what states do, the Eviction Moratorium purports to deprive home providers of any resort to state

law mechanisms for eviction. And state laws no longer even permit self-help evictions by the simple expedient of changing locks.

36. The CDC Order said, "'Evict' and 'Eviction' mean any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. This does not include foreclosure on a home mortgage." *Id*. at 55293. Perversely then, home providers like Plaintiffs here cannot pursue evictions, but if they default on their mortgages and lose their properties, the banks can so evict! The same is true for Plaintiffs who can lose their property at a tax sale when their tenants' failure to pay rent leaves Plaintiffs unable to pay local taxes on their properties.

37. The CDC Order also said, "[A] person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both[.]" *Id*. at 55,296. In imposing the lesser of these criminal penalties, there is no requirement for the CDC to prove that any eviction led to the spreading of Covid-19 or any other collateral harm.

38. To invoke coverage under the CDC Order, tenants must complete and sign a declaration, certifying under penalty of perjury that the tenant: is unable to pay rent "due to substantial loss of household income, loss of compensable hours of

work or wages, lay-offs, or extraordinary out-of-pocket medical expenses;" is "using best efforts to make timely partial payments that are as close to the full payment as … circumstances permit"; has "used best efforts to obtain all available government assistance for rent or housing"; earns less than $99,000 per year (or $198,000 for joint filers); and is "likely to become homeless" if evicted. These declarations, however, go unchallenged. State courts rarely allow inquiry as to whether the facts behind the declaration are truthful. Mere mention of the CDC Order forestalls evictions.

39. The CDC Order, which does not preclude evictions based on criminal activity, property damage, violations of building or health codes, or violations of any other contractual provisions, does not explain how tenants evicted for non-payment of rent are more likely than other tenants to spread Covid-19 if evicted. Nor does the order explain why CDC believes these tenants are likely to spread Covid-19 across state lines following an eviction for non-payment of rent.

40. Once again, this extraordinary and unprecedented measure was issued without statutory authority and beyond the power of the federal government on the pretext that preventing only those evictions for the non-payment of rent somehow limits the spread of Covid-19. *Id.*

41.     Notably, the CDC Order called on state and local officials to assist with enforcement of the CDC Order, whether or not they wished to do so. *Id.* ("Notice to Cooperating State and Local Officials").

**B. CDC Has Extended Its Order Repeatedly in the Face of a Near Judicial Consensus that the Order Is Unlawful**

42.     The CDC Order was initially effective upon publication on September 4, 2020, until December 31, 2020, "unless extended." *Id*. at 55,297.

43.     Congress then extended the Order from the new year until January 31, 2021, through Section 502 of Title V, Division N of the Consolidated Appropriations Act of 2021.

44.     After the brief congressionally authorized period, CDC extended its order several more time:  In January 2021, CDC extended the Order until March 31, *see Order*, *available at* https://bit.ly/2W713Fi; then through June 30, *see Order* https://bit.ly/3xSoi2R; and then again through July 31, *see Order* https://bit.ly/37QPDYJ.

45.     While the Order was still set to expire on July 31, the Supreme Court considered an application to vacate a stay of decision that the U.S. District Court for the District of Columbia entered after that district court had ruled that the statutory authority on which CDC relied "plainly do[es] not encompass the nationwide eviction moratorium set forth in the CDC Order." *Ala. Ass'n of Realtors v. HHS*, No. 20-cv-3377, 2021 WL 1779282, *8 (D.D.C. May 5, 2021).

46.     Although the Supreme Court, without issuing an opinion, declined to vacate the district court's stay of its own order, *five* members of the Court agreed that the Order was unlawful. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2320 (2021). Justices Thomas, Alito, Gorsuch, and Barrett would have granted the petitioner's application, and Justice Kavanaugh concurred in the denial of temporary relief but explained:

> **I agree with the District Court and the applicants that the Centers for Disease Control and Prevention exceeded its existing statutory authority by issuing a nationwide eviction moratorium**. Because the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds, I vote at this time to deny the application to vacate the District Court's stay of its order. **In my view, clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31.**

*Id.* at 2320-21 (emphasis added; citations omitted).

47.     Following the Supreme Court's lead, a divided panel of the Eleventh Circuit soon also decided to leave the CDC Order in place until July 31 despite seeming agreement that the Order is unlawful. *See Brown v. HHS*, 2021 WL 2944379, 4 F.4th 1220, --- (11th Cir. 2021), *reh'g petition pending* (filed August ___, 2021). The panel majority ruled that the plaintiffs had not made a sufficient evidentiary showing of irreparable harm but expressed "doubts" about the district court's ruling that the plaintiffs were not likely to succeed on the merits. *Id.* at *2;

*id.* at \*3 ("[D]espite our doubts, we need not consider or resolve the scope of the CDC's statutory authority.").

48.     In a 60-page dissent, Judge Branch concluded that "district court abused its discretion in finding that the landlords failed to establish a substantial likelihood of success on the merits of their claim that the CDC Order exceeds statutory authority." *Id.* at \*14.   In reaching this conclusion, Judge Branch cited Justice Kavanaugh's concurring statement in *Alabama Association of Realtors*, writing, "Thus, five justices appear to agree that the CDC Order likely exceeds the statutory authority set out in § 264(a)." *Id.* at \* 28.

49.     A week later, the Sixth Circuit also agreed, in a precedential opinion, that the Order is unlawful.   *Tiger Lily, LLC v. HUD*, No. 21-5256, 2021 WL 3121373, at \*5 (6th Cir. July 23, 2021).

50.     Given the near judicial consensus that CDC Order is unlawful, the Biden administration conceded that it lacked the authority to issue the order, much less renew it again:

> President Biden would have strongly supported a decision by the CDC to further extend this eviction moratorium[.] Unfortunately, the Supreme Court has made clear that this option is no longer available.

*Statement by Press Secretary Jen Psaki* (July 29, 2021), *available at* https://bit.ly/2VXjzAe.

51.     On August 3, President Biden again spoke to the issue, saying, "Well, look, the courts made it clear that the existing moratorium was not constitutional; it wouldn't stand." *Remarks by President Biden* (August 3, 2021), *available at* https://bit.ly/3gcki7h.  He continued, "The bulk of the constitutional scholarship says that [a new Order is] not likely to pass constitutional muster. … But the present—you could not—the Court has already ruled on the present eviction moratorium." *Id.* Nevertheless, the President suggested CDC might issue a new order, but "[w]hether that option will pass constitutional measure with this administration, I can't tell you. I don't know. … But, at a minimum, by the time it gets litigated, it will probably give some additional time[.]" *Id.*

52.     Later that same day, CDC issued a new extension of the Order, yet again invoking Section 264, remaining in effect until October 3, 2021. *See Order available at* https://bit.ly/3iUlM7Z.

53.     President Biden would later explain his reasoning in issuing the dubious Order saying, "And I went ahead and did it, but here's the deal: I can't guarantee you the Court won't rule if we don't have that authority, but at least we'll have the ability, if we have to appeal, to keep this going for a month at least—I hope longer than that." *Remarks by President Biden* (August 5, 2021), *available at* https://bit.ly/2VVg7Gj.

54.     The newly extended moratorium "differs from its predecessor in that it applies only 'in the U.S. count[ies] experiencing substantial or high levels or community transmission of SARS-CoV-2 as defined by CDC." *Ala. Assoc. of Realtors v. HHS*, 2021 WL 3577367, at *2 (D.D.C. Aug. 13, 2021).

55.     As the District Court for the District of Columbia has already determined, "the current eviction moratorium is an extension" of the prior iterations of CDC's Order. *Id.* at *3-4.

56.     As of August 17, 2021, according to records kept by Defendant CDC, 198.6 million Americans have had at least one dose of a Covid-19 vaccine, and 168.7 million Americans are fully vaccinated. *COVID Data Tracker*, CDC (last checked August 17, 2021), *available at* https://bit.ly/3k0U6xM.

57.     Also according to the CDC, almost 60% of the American population has been vaccinated, with such vaccines concentrated in the most vulnerable populations, and over 50% of the country is fully vaccinated, also concentrated among the most vulnerable. *Id.*

58.     Yet nothing, in even the most recent CDC Order, distinguishes among tenants who are vaccinated or those who have already had the disease and developed natural immunity through antibodies in their recovery.

## C. CDC's Order Fails to Account for Vaccines & Naturally Acquired Immunity to Covid-19

59.     Despite the greatly changed disease and risk environment since September 2020, the Eviction Moratorium remains in place as a national housing policy masquerading as a public health policy, devastating home providers and eliminating their rights to access state courts across the country—all by an agency with no authority to begin with over housing policy.

60.     The CDC Order affects the rights to real property.  Money damages—particularly theoretical money damages from tenants who have attested to their insolvency in order to qualify for the moratorium—are inadequate to compensate denial of access to and possession of real property, which is treated differently from other kinds of property under the common law as it existed at the time the Constitution was enacted and by the law of the states since that time.  Private landowners rely on state property law when purchasing real property, and no *ultra vires* federal law of property rights should be permitted to upset this substantial interest in the stable arrangements provided for by state property law.  *See, e.g., Phillips v. Washington Leg. Found.*, 524 U.S. 156, 164 (1998) ("an independent source such as state law" typically determines the scope of property rights).  CDC's eviction moratorium thus works a particular, irreparable harm on those it affects and subordinates state law in an area traditionally left almost wholly to state power.

61.     That irreparable harm is compounded by CDC's continued re-authorization of its Order.  The CDC Order has devalued the Plaintiffs' real property because, so long as CDC maintains its claimed authority to prevent evictions, home providers like the Plaintiffs have lost the stick in their bundle of property rights that allows them to exclude unwanted persons from their property.

62.     The harm is also irreparable given the duration of the CDC Order and the order's reliance on the tenants' inability to pay.  In other words, the Eviction Moratorium protects only those tenants who attest that they have no ability to pay rent.  The longer the CDC Order remains in effect, the more unpaid rent accrues, and the less hope Plaintiffs have of ever recovering full damages from their defaulting tenants.

63.     The harm is also irreparable because by CDC taking this unprecedented action, Plaintiffs, and the class of which they are a part, have had the value of their rental properties permanently reduced, as every buyer and seller must "price in" the prospect of an action like this being taken by the CDC if Covid-19 flares up again, another pathogen emerges, or (because there is no limiting principle) the generic flu season gets worse than normal.  CDC's Order will cause some Plaintiffs to leave the rental-housing market, thereby reducing housing supply.  Those Plaintiffs who stay in the rental-housing market will need to increase rent to "price in" the risk of another moratorium.  Both eventualities caused by the CDC Order hurt tenants and home

providers alike. The mere existence of this assertion of unlawful power by the Defendants, even should the Order expire end at some future point, irreparably harms the value of the real property of Plaintiffs. Simply put, ceasing the current order does not eliminate the irreparable harm that Defendants have caused to the Plaintiffs (let alone the rental market generally) without a declaratory statement and court injunction.

**D. The Plaintiffs' Inability to Evict Tenants and Recover Their Property**

64.     Plaintiff Mossman has a single unit in default in Cedar Rapids, Iowa, and is owed many thousands of dollars in back rent. In December 2020, he obtained a judgment of eviction against his tenants in Linn County, Iowa court. But his tenants signed the CDC Order's required recitations that they make less than $99,000 a year, are unable to pay, and are making best efforts to do so. The state court therefore stayed his eviction order pending the expiration of Eviction Moratorium set out in the CDC's Order. The state court reissued the stay when Defendants reissued the CDC Order. Mr. Mossman would evict his tenants and reclaim his property except for the CDC Order. The lease the tenants are party to was up in March 2021, but Mr. Mossman still could not evict the tenant. His tenants were insolvent, and thus any resort to obtaining money damages from them is a chimera. His tenant still owes over $5,000 in unpaid rent. Since his tenant vacated, Mr. Mossman has placed more restrictions in his leases, limited the tenants to which he

will rent, doubled the security deposit he requires, and has more readily sought to evict tenants not covered by the CDC Order for cause whenever cause has arisen. He fears further loss of his property rights. The Defendants' unlawful actions have therefore denied him the right to his property as allowed under Iowa law and in contravention of the laws of the United States.

65. Plaintiff Shriver provides residential housing to a tenant in Independence, Missouri. She has leased her property to two tenants for $795 per month since October 2019. They have paid no rent since August 2020. She is owed thousands in unpaid rent and unpaid court costs and legal fees allocated by the state court in Missouri from actions Plaintiff Shriver has initiated. In September 2020, she provided a formal demand for rent and notice of vacation of the property as required by Missouri law. She brought a writ of possession in the 16th Judicial Circuit Court in Jackson County, Missouri. At the hearing on that action, her tenants presented the form provided for in the CDC Order, attesting that they made less than $99,000 a year, were unable to pay because of the economic stresses of Covid-19, and had used best efforts to obtain government assistance and were using best efforts to make partial payments. The court made no effort, nor allowed any effort, to test the truth of these declarations and, in general, courts do not test declarations presented under the CDC-established process. Upon receipt of the declarations, and without more, the court dismissed the writ without prejudice to refile in January

when the CDC Order was set to expire. Because the order has not expired, Ms. Shriver is allowed no further action. Given their attestations in the declarations, and their inability to pay rent since August 2020, the tenants are likely insolvent, and any resort to obtaining money damages is thus chimerical. Plaintiff Shriver is being irreparably harmed by the CDC Order and Eviction Moratorium.

66. Plaintiff Kanak is the principal of Plaintiffs 7M Apartments LLC and 7M Real Estate LLC, both of which are located in Orlando, Florida, where they rent 93 and 40 units, respectively. Plaintiffs' tenants have come into their offices and handed in the CDC declaration and stated that Plaintiffs cannot evict them for their failure to pay rent. In state-court eviction proceedings, the Florida state courts have granted motions to stay the Plaintiffs' eviction proceedings based on the CDC Order.

67. Plaintiff NAA is a trade association for owners and managers of residential rental housing that is comprised of 157 state and local affiliated apartment associations, and over 82,600 members who manage more than 9.7 million rental homes throughout the United States, including in Iowa, as well as Canada and the United Kingdom. NAA has members throughout the United States who are entitled to writs of possession and eviction against tenants in default in states without eviction moratoria. NAA's members in the United States continue to provide habitable premises to their tenants, but they have been prohibited by CDC from utilizing existing state law procedures for evicting delinquent tenants for

nonpayment of rent when presented with a form declaration.  Because of the CDC Order, NAA's relevant members have suffered significant economic damages, including unpaid rent and fees, as well as monthly maintenance costs, damages to their property, and the lost opportunity to rent their properties to other people at fair market value or use the properties themselves.  NAA's relevant members will be unlikely to obtain any economic relief or damages from their tenants once the CDC Order is lifted because, by definition, any tenant presenting an appropriate attestation lacks the ability to pay the back rent and is consequently insolvent.  NAA's relevant members will accordingly lose millions of dollars in uncollected rents, while expending huge sums for maintenance and costs.  Many of NAA's member businesses are unlikely to recover from the economic stress caused by the CDC Order.  NAA members' only opportunity to mitigate their losses will be from ousting their tenants who are in wrongful possession of the premises.  They are being irreparably harmed by the CDC Order.

68.  Plaintiff NARPM is a trade association of residential property managers throughout the United States, including in Iowa.  It has over 5,000 members including eight in Iowa.  NARPM members manage more than two million rental units across the country.  They have members who have tenants that have failed to pay rent for more than one month.  They have the right to evict tenants under state law, including that of Iowa.  However, some of those tenants have

provided the statement recommended by the CDC order, leaving NARPM's members unable to use the Iowa state courts to evict them. Like the other Plaintiffs' tenants, those of NARPM's members who have relied on the CDC Order are insolvent. These members are being irreparably harmed by the CDC Order.

69.     Mr. Winston Tracy Mills owns residential rental property in South Carolina and has a tenant in default. The tenant defaulted in April 2020 and the lease expired in May 2020. The tenant is not paying rent and is relying on the CDC Order. Plaintiff Mills is owed at least $24,000 in rent. Mr. Mills has instituted state law proceedings but will be unable to evict given the CDC Order. Considering Mr. Mills's tenant is unable to pay any rent and now owes at least $24,000, the tenant is insolvent, and any reliance on obtaining a future judgment would be chimerical. The CDC Order is irreparably harming Mr. Mills.

70.     Equity Trust Co. is a custodian of an IRA organized under the laws of South Carolina. The principals and owners of the IRA are spouses Steve and Susan Harrison. The property is located in Berkley County, South Carolina. The tenants stopped paying rent in November 2020. The monthly rent is $1,200 per month, and Plaintiff is owed thousands of dollars. The tenants, aware of the CDC Order, are not paying rent, as they claim to qualify for the terms of the necessary declaration under the CDC Order, stating the amounts they make and the economic stress of Covid-19. They are likely insolvent, and any reliance on obtaining a judgment would be

chimerical. Their tenants have indicated that they are relying on the CDC Order and understand that it applies to them. State court eviction processes in South Carolina would be fruitless under these circumstances. The CDC Order has irreparably harmed Equity Trust Co.

71.     Plaintiff Harold and Sarah Schoeffler Real Estate Holdings Co., LLC ("Schoeffler Real Estate") is an LLC organized under the laws of Louisiana, and its principals are spouses Harold and Sarah Schoeffler. The LLC's tenant is in default. The tenant has not paid rent since June 2020 and are in default more than $8,000. They are relying on the CDC Order to resist eviction under Louisiana law. The tenant produced the CDC Order declaration at the state court proceeding for eviction on October 13, 2020, and the Louisiana courts refused to evict based on that submission. They are likely insolvent and any resort to obtaining money judgment would be chimerical. Plaintiff Schoeffler Real Estate is being irreparably harmed by the CDC Order.

72.     Plaintiff Helen Fitzgerald is a natural person living in New Hampshire. She has a rental property in New Hampshire, and the tenant is more than $14,000 in default on rent and utilities. The last payment of any kind was in August 2020. At an eviction hearing in state court in October 2020, the tenant provided the declaration required by the CDC Order, and the court halted eviction, which cannot be resumed in state court while the CDC Order remains in effect.

73.     Plaintiffs Emanuel and Jessica John are natural persons and spouses in Wyoming.  They own a single-family rental property in Breaux Bridge, Louisiana.  The tenant has not paid rent since September 2020 and owes more than $12,000 in back rent and late fees.  But the tenant has provided the recommended declaration under the CDC Order that he is unable to pay rent because of Covid-19, makes less than $99,000 a year, and avers will do his best to pay what he can.  The courts of Louisiana refuse to evict due to the CDC Order.  The tenant is insolvent and any attempt to recover redress through money damages is chimerical.  Plaintiffs the Johns are being irreparably harmed by the CDC Order.

74.     Plaintiff Butler Plantations, LLC is an LLC organized under the laws of Georgia.  Its principal is the natural person Rhett E. Butler, Jr. of Georgia.  It owns 12 rental properties in Georgia with three tenants currently in default whom Plaintiff cannot evict because of the CDC Order.  The tenants are over $20,000 in arrears.  After Plaintiff filed for eviction, the tenants submitted the CDC information directly to the court in Georgia, which will not schedule any further hearings or proceed with the case because of those submissions.  The Georgia courts have informed Plaintiff that they will not schedule hearings until the end of the Eviction Moratorium.  Plaintiff still must pay all property taxes and keep up the property while being denied the revenue to do so.  They have already had a tax lien put on their property because the lack of rental income caused the Plaintiff to fall behind on their rental properties'

taxes.  The defaulting tenants are insolvent and any attempt at recouping these losses by judgments against them is chimerical.   The CDC Order is causing Plaintiff irreparable harm.

75.    Plaintiffs Chris and Tomika Allen are natural persons, spouses, and residents of the State of Georgia.  They own rental property that is in default in Fulton County, Georgia.  The tenant is more than $5,000 behind in rent.  They attempted eviction on February 28, 2021, but the state court refused because of the CDC Order, which the tenant referenced in her submission to the Court.  They were forced into mediation, but the tenant did not pay the amount agreed to at mediation. The tenant is insolvent, and Plaintiffs are unlikely to be able to obtain the money owed.  They would evict the tenant but are being prevented by the CDC Order.  The CDC Order is irreparably harming plaintiffs.

76.    Plaintiff Grant J. Anderson is a natural person and resident of Indiana. He owns two rental properties in Indiana, both of which have a tenant currently in default.  The monthly rent for the properties is $1,131 and $840, respectively.  The tenants have not paid rent in over a year and are in default over $15,000.  The tenant who owes $1,131 per month in rent has cited the CDC Order as the reason for not paying and cannot be evicted.  The tenants are insolvent and any attempt to obtain

damages would be chimerical. Plaintiff Anderson would evict the tenants if not prevented by the CDC. He is being irreparably injured by the CDC Order.

77.     Plaintiff Shraddha Kanak is a natural person residing in Florida and the principal of Plaintiffs 7M Apartments LLC and 7M Real Estate LLC (together "the Kanak Plaintiffs"), both controlling rental apartment buildings in Orlando, Florida. Both apartment buildings have dozens of tenants in default. As many as 36 of their tenants have provided the declaration required by the CDC Order, and many of them falsely. Nonetheless the declarations alone cease eviction. Most of these tenants are nine months in arrears in rent and eligible for eviction under Florida law. While the Kanak Plaintiffs have received some rental reimbursement from state programs in Florida, they are routinely hundreds of thousands of dollars out of pocket on rent from the tenants' failure to pay their obligations. Even attempts to list the apartments for sale have so far been unavailing given the CDC Order. Because of the CDC Order, many tenants simply produce the required declaration and then fail to seek rental assistance as there is no penalty for not doing so. The Kanak Plaintiffs are being injured in hundreds of thousands of dollars that they will never see for future damage awards are purely hypothetical; they would evict the tenants if they could.

78.     Plaintiff Mr. Richard McConkie is an American citizen and natural person who normally resides in Virginia. He is currently a resident of Okinawa, Japan working for the American military presence there. He rents out his house in

Virginia to a tenant who is currently in default. The tenant has been $18,000 dollars in arrears in rent. Mr. McConkie has been able to recoup some of that through a Virginia program for landlords, but the tenant is still in arrears $4,200. Mr. McConkie is hopeful that the Virginia state program will reimburse him the rest of the unpaid rent. Mr. McConkie, however, would like to evict this tenant, so that his income and control of his property is no longer at risk. Plaintiff cannot access the courts to evict because of the CDC Order.

79. Plaintiff Titans Creek, LLC is a Kentucky LLC, the principal of which is the natural person Ms. Kendra Kessinger, also a resident of Kentucky. Titans Creek rents residential property in Kentucky and currently has 13 tenants in default. The trailer park in Columbia, Kentucky, has 17 tenants who have all raised, some via declaration under the CDC Order and some verbally under the rubric of the CDC Order preventing their eviction. At least one tenant has left Plaintiffs' property in completed disrepair. (Attachment 1). In addition to the cost for the cleaning and repairs when Plaintiffs regain possession of their properties, Titans Creek is owed at least $51,570 in defaulted rent and obtaining this money from these tenants by money judgment is a chimerical option. Plaintiff would evict these tenants were the

CDC Order not preventing it from doing so. Titans Creek is being irreparably harmed by the CDC Order.

80.     Plaintiff Regina Tillman is a natural person living in California.  She has a rental property in Decatur, Georgia.  Her tenant has not paid any of his $1,500 per month rent since February 2020.  He is over $17,000 in arrears and is aware that the CDC Order prevents eviction.  Plaintiff has no reasonable chance of receiving the back rent from her tenant through a money judgment; she would evict the tenant if allowed.

81.     Plaintiffs Dennis and Roseanne D. Norton are natural persons and spouses in North Carolina.  They own ten rental units in North Carolina, two of which are in default. The monthly rent ranges from $600 to $750.  One defaulting tenant ceased paying in December 2020 and the other is two months in arrears but has made partial payments.  Plaintiffs would evict these tenants if they could.  Their tenants, however, are relying on the CDC Order and have made the recitations it requires, including that they make less than $99,000 a year, have been economically impacted by Covid-19, and will pay what they can when they can.  They have stated they have attempted to get money from the State of North Carolina but have not been able to do so.  North Carolina had an eviction moratorium of its own that expired on January 31, 2021.  Plaintiffs' tenants are now relying on the existence of the CDC

Order not to pay. Any hope of recouping unpaid rent through money damages is chimerical. Plaintiffs are being irreparably harmed by the CDC Order.

82. Millstone Properties, Inc. ("Millstone") is an Illinois corporation that owns a rental property in Chicago. The tenant, who was on a month-to-month lease, stopped paying rent in September 2019, but it took until January 2020 to obtain a state court judgment of eviction. The sheriff was not to evict under the judgment until March 2020, at which point the pandemic hit. Since that time, the CDC Order and a similar order by the Illinois Governor have prevented execution of Millstone's right to evict. The tenant owes approximately $37,000 but is insolvent and unlikely to pay any judgment. The CDC Order is causing irreparable harm to Millstone.

83. Plaintiff Mr. Jason Sudia is a natural person and a resident of New Jersey. He owns two rental properties in New Jersey. The tenants for both properties are in default of rental obligations in excess of $10,000 and explain they will not pay as long as there is a rent moratorium in effect. Mr. Sudia would evict them if he could but he cannot under a New Jersey gubernatorial order, any legal challenge to which would be fruitless given that it is backstopped by the CDC Order. The tenants are likely insolvent, so the ability to obtain redress by money damages is chimerical. He is being irreparably harmed by the CDC Order.

84. Plaintiff Amanda Fletcher is a natural person and a resident of New Jersey. She owns rental property in New Jersey which is currently in default. The

tenant is in default over $40,000. Plaintiff Fletcher went to court and obtained judgment against the tenant for damages. The tenant still did not pay. Plaintiff then sought a judgment of eviction in the state court. On August 15, 2021, New Jersey courts again denied Ms. Fletcher's motion for an eviction for non-payment of rent. Her tenant emboldened by Defendants' order has brazenly offered to move out if Ms. Fletcher agrees to forgive all back rent and pay the tenant $3,700 to vacate. Since April 2020, she has been prevented from obtaining eviction by the Governor's eviction order in New Jersey, backstopped by the CDC Order since early September. The tenant has demonstrated complete inability to pay, and Plaintiff is being irreparably harmed by the CDC Order.

85.     Plaintiffs CFH Properties LLC is a Washington State LLC registered as a foreign corporation in Oregon. It owns a rental property in Oregon, with a monthly rent of $1,475. Its tenant is in arrears $16,225. Plaintiff cannot evict the tenant because the Governor of Oregon has issued an eviction moratorium, which the CDC Order backstops by prohibiting eviction even after the state moratorium ceases. The tenant is unlikely to be able to pay any money judgment, and reimbursement of the Plaintiff is unlikely. Plaintiff CFH Properties is being irreparably injured by the CDC Order.

86.     All of the Plaintiffs have maintained their properties and are current on all their obligations to tenants. They are all bearing enormous financial burdens due

to the Defendants' ordering them to house people to whom they are not related and with whom they have only a contractual relationship. Worse, CDC's order deprives the Plaintiffs of any legal process by which they can contest their tenants' self-certification of financial hardship. This ukase is unjust, unlawful, and unconstitutional. It represents a federal agency's arrogation of federal legislative power and state judicial power.

## COUNT I: UNLAWFUL AGENCY ACTION WITHIN THE MEANING OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(2)(A) & (B), (C)—CDC EXCEEDED ITS STATUTORY AND REGULATORY AUTHORITY BY ISSUING THE ORDER HALTING RESIDENTIAL EVICTIONS

87.    Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

88.    Under the Administrative Procedure Act, this Court is required to hold unlawful and set aside agency action, findings, and conclusions that it finds to be contrary to constitutional right or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right and, as to failures to comport with regulatory law, to hold unlawful and set aside agency action "otherwise not in accordance with law." *See* 5 U.S.C. §§ 706(2)(A)(B) & (C).

89.    The CDC Order was purportedly issued under the authority of "Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2."

90.     Under 42 U.S.C. § 264(a), the CDC, through power vested in the Secretary of HHS, may only "make and enforce such regulations" as "are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." "For the purposes of carrying out and enforcing such regulations," the statute authorizes CDC to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.*

91.     As the second sentence of the statutory provision makes clear, Congress limited CDC's regulatory power to the types of actions identified in the illustrative list in the second sentence—things such as "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles." *Id.*  Reading these sentences together, the statute authorizes CDC, through HHS, to take certain actions to inspect, sanitize, or even destroy contaminated "animals or articles" that may cause an interstate health risk.  *Id.*; *see also Tiger Lily*, 2021 WL 3121373, at *2 (holding that principles of statutory interpretation require the Court to "interpret the scope of the grant of rulemaking authority in the first sentence of § 264(a) by reference to the means to authorizes in the second [sentence]").  "With this language, Congress directs the agency to act on specific animals or articles which are

themselves infected or a source of contagion that present a risk of transmission to other people." *Skyworks Ltd. v. CDC*, 2021 WL 911720, at *9 (N.D. Ohio, Mar. 10, 2021). "Applying the *ejusdem generis* canon of statutory construction, the residual phrase in the second sentence of § 264(a)—which allows the Secretary to take 'other measures' he deems necessary to stop the spread of disease—encompasses measures that are similar to inspection, fumigation, destruction of animals and the like." *Tiger Lily*, 2021 WL 31213773, at *3.

92.     The regulation of state-court eviction proceedings for the non-payment of rent is beyond the scope of CDC's statutory authority, as it has nothing to do with CDC's limited authority to inspect, sanitize, or destroy animals or other similar articles that may pose an interstate health risk to humans. *Id.* ("Plainly, an eviction moratorium does not fit that mold."). "Defendants' theory renders the limitations of the statute—*e.g.* inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals, or articles to be so infected or contaminated—superfluous or surplusage which must be resisted." *Tiger Lily, LLC v. HUD*, No. 2:20-cv-02692, 2021 WL 1171887, at *7 (N.D. Ohio Mar. 15, 2021) (citing *Yates v. United States*, 574 U.S. 528, 543 (2015)).

93.     Under 42 C.F.R. § 70.2, when the CDC Director "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the

communicable diseases from such State or possession to any other State or possession" the Director is authorized to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

94.     The CDC Order purports to restrict "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from "evict[ing] any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." 85 Fed. Reg. at 55,292.  A "covered person" is "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating" certain information outlined in the Order.  85 Fed. Reg. at 55,293; *see also* 85 Fed. Reg. at 55,297 (CDC Declaration form). The original effective period of the Order was from September 4, 2020 through "at least" December 31, 2020. 85 Fed. Reg. at 55,292.  As noted above, it has been reissued and reextended to October 3, 2021.

95.     The CDC Order by its terms applies only to States, local, territorial, or tribal areas that do not have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this

35

Order." 85 Fed. Reg. at 55292. Its mere existence, however, has become well-known, and tenants across the country have relied on it to forgo rent payments and even shake down home owners for payments to leave.

96.     The CDC Order baldly states that Defendant Witkofsky "determined the temporary halt in evictions in this Order constitutes a reasonably necessary measure under 42 CFR 70.2 to prevent the further spread of Covid-19 throughout the United States." 85 Fed. Reg. at 55296. The Order further states that she "determined that measures by states, localities, or U.S. territories that do not meet or exceed these minimum protections [i.e., those that do not have their own more-restrictive residential eviction moratoria] are insufficient to prevent the interstate spread of COVID-19." 85 Fed. Reg. at 55296.

97.     The CDC Order does not identify or offer any analysis whatsoever about which States, local, territorial, or tribal areas have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55,292. Nor does it elucidate how a home provider, tenant, or court should so identify the states in which the Order is in effect.

98.     Individuals or organizations that violate the CDC Order are subject to criminal penalties, including fines and jail time. *See* 85 Fed. Reg. at 55,296; *see also* 18 U.S.C. §§ 3559, 3571; 42 U.S.C. § 271; 42 C.F.R. § 70.18.

99.     Agencies have no inherent power to make law.  *See Loving v. United States*, 517 U.S. 748, 758 (1996) ("[T]he lawmaking function belongs to Congress … and may not be conveyed to another branch or entity.").  This limitation is a constitutional barrier to an exercise of legislative power by the executive branch. Agencies have "no power to act … unless and until Congress confers power upon [them]."  *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *Tiger Lily*, 2021 WL 3121373 ("So in determining what authority Congress statutorily delegated to an agency, we look 'not only to the ultimate purposes Congress has selected, but to the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.") (cleaned up) (quoting *MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 231 n.4 (1994).

100.    Nothing in the relevant statutes or regulations purports to give CDC the power or authority to order an eviction moratorium.

101.    Nothing in the relevant statutes or regulations purports to give CDC the power or authority to criminalize otherwise lawful behavior.

102.    The Order was issued in excess of any statutory authority actually provided and is therefore invalid.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or

extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT II: UNLAWFUL AGENCY ACTION WITHIN THE MEANING OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)— THE ORDER IS ARBITRARY AND CAPRICIOUS

103.  Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

104.  Under the Administrative Procedure Act, a court must set aside "arbitrary and capricious" agency action.  5 U.S.C. § 706(2)(A).

105.  The CDC Order fails the arbitrary and capricious standard because it is inconsistent with the demands of basic rationality and is unsupported by record evidence.

106.  Even according to its own terms, CDC has not met its baseline obligation of showing that local jurisdictions are taking "insufficient" measures to prevent the spread of Covid-19, as required when CDC acts under the authority purportedly granted by 42 C.F.R. § 70.2 (granting authority to CDC when the agency "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases[.]").

107.  CDC has also failed to catalogue in the administrative record or the Order itself the efforts taken by *any* jurisdiction to combat Covid-19. Nor has it

explained why allowing eviction proceedings, more than any other aspect of prevention strategies, represents the line that states may not cross. Nor has CDC cited *any* evidence that any infection has arisen because of an eviction proceeding, let alone evidence that evictions in general pose a significant danger to the public.

108. CDC's secondary conclusion, that an eviction moratorium is "necessary" to stop the spread of Covid-19 is unsupported by evidence, and CDC has abjectly failed to stop the spread of Covid-19 to all 50 states. CDC made no findings that any significant portion of evicted tenants would travel interstate. *Terkel v. CDC*, 2021 WL 742877, at *7-8 (E.D. Tex. Feb. 25, 2021). The CDC Order "applies without regard to whether an evicted tenant would move to a new city, much less a new state." *Id.* at *8. Moreover, "[t]he order applies without regard to a tenant's infection with, prior exposure to, or vaccination against COVID-19." *Id.*

109. In fact, CDC is careful never to actually say that the moratorium is necessary—the best it can do is say that "[i]n the context of a pandemic, eviction moratoria—like quarantine, isolation, and social distancing—can be an effective public health measure utilized to prevent the spread of communicable disease." 85 Fed. Reg. at 55294. But even this tepid statement lacks any real evidentiary support.

110. Instead, CDC relies on hyperbolic reasoning—saying that "mass evictions" and "homelessness" might increase the likelihood of Covid-19, and thus that that the *only* appropriate course of action is to halt evictions nationwide. *See* 85

Fed. Reg. at 55294-96. CDC does not explain sufficiently why this would be so or why other less-drastic remedial measures are inadequate. *See Miller v. Hartford Life & Accident Ins. Co.*, 944 F.3d 1006, 1011 (8th Cir. 2019) (explaining that an agency's decision is arbitrary and capricious when it is not "supported by substantial evidence, meaning more than a scintilla but less than a preponderance"). *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) (agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

111.   CDC does not explain why it chose $99,000 dollars as the amount a person could make and still not pay rent.  This is arbitrary and capricious, as many tenants could be making more than their home providers and still not pay rent.

112.   CDC does not explain why a person evicted for breaching their lease in a different manner than non-payment of rent—for instance, breaching a lease by housing persons who are not identified on the lease—would not cause the spread of Covid-19 in the way it purports that evictions for non-payment of rent would.

113.   CDC also does not explain why a person who has bought and maintained a property must bear the costs and burdens of a rental agreement and be

denied access to state courts for evictions. Yet, if because of the Eviction Moratorium and the lack of funds it creates an owner of a property is foreclosed upon, the banks can evict the same tenant!

114. CDC also does not explain why other remedial measures are inadequate, such as providing vaccines to anyone who might be forced into congregate housing arrangements as the result of an eviction.

115. The evidence on which CDC relies fails to support CDC's Order, and it is thus arbitrary and capricious.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

### COUNT III: VIOLATION OF THE DUE PROCESS CLAUSE—THE ORDER DENIES PLAINTIFFS THE RIGHT TO CONTEST THEIR TENANTS' SELF-CERTIFIED DECLARATION OF FINANCIAL HARDSHIP

116. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

117. The APA requires agency action "contrary to constitutional right, power, privilege, or immunity" to be held unlawful and set aside. 5 U.S.C. § 706(2)(B).

118. The Due Process Clause of the Fifth Amendment provides that "[n]o person hall … be deprived of life, liberty, or property, without due process of law[.]"

119. "[P]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (cleaned up).

120. The procedural rules that enforce this constitutional right "are shaped by the risk of error inherent in the truthfinding process[.]" *Id.* at 344. "[F]airness can rarely be obtained by secret, one-sided determination[s] of facts decisive of rights." *Connecticut v. Doehr*, 501 U.S. 1, 14 (1991).

121. The CDC Order violates the Plaintiffs' right to due process because it denies them an opportunity to be heard when their tenants' self-certify the CDC's declaration of financial hardship. Without a procedural safeguard to ensure that their tenants truly cannot pay even $1 in rent and will become homeless if evicted, the Plaintiffs lack any record to challenge the hardship declaration. Rather than due process, the CDC Order provides is "no process at all." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

122. As the Supreme Court recently recognized when confronted with New York's similar scheme, it is *indisputably clear* that it violates due process for the

government to permit tenants to halt eviction proceedings by merely self-certifying their own financial hardship. *Chrysafis v. Marks*, No. 21-1493, 2021 WL 3560766 (Aug. 12, 2021) (per curiam). According to the Court, such a scheme "violates the Court's longstanding teaching that ordinarily 'no man can be a judge in his own case' consistent with the Due Process Clause." *Id.* at *1 (quoting *In re Murchison*, 349 U.S. 133, 136 (1952)); (citing *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993) (due process generally requires a hearing)).

123. Even though the Order is only temporary (if not extended and re-extended in perpetuity), the Supreme Court has made clear that "temporary or partial impairments to property rights … are sufficient to merits due process protection." *Doehr*, 501 U.S. at 12; *cf. also Fuentes v. Shevin*, 407 U.S. 67, 84-85 (1972) ("[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in terms of the Fourteenth Amendment."). Indeed, the New York moratorium that the Supreme Court just enjoined in *Chrysafis* was set to expire. *See* 2021 WL 3560766, at *2 (Breyer, dissenting) (noting that New York's eviction moratorium was set to expire three weeks from the Court's order).

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or

extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT IV: VIOLATION OF THE RIGHT OF ACCESS TO COURTS UNDER THE U.S. CONSTITUTION—THE ORDER UNLAWFULLY IS DENYING PLAINTIFFS ACCESS TO THEIR ONLY LAWFUL MEANS OF EVICTING DELINQUENT TENANTS

124.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

125.   The APA requires agency action "contrary to constitutional right, power, privilege, or immunity" to be held unlawful and set aside.  5 U.S.C. § 706(2)(B).

126.   The Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fifth Amendment Due Process Clause collectively provide a federal constitutional right of access to courts.  *Christopher v. Harbury*, 536 U.S. 403, 415, 415 n.12 (2002).

127.   No governmental actor may systematically frustrate a plaintiff "in preparing and filing suits" by foreclosing a particular type of relief.  *Id*. at 413.

128.   In virtually every state where Plaintiffs reside or hold property and in virtually every state in the nation, the state requires a landlord to use its processes and not self help to repossess his or her property.

129.   In Iowa, for example, a home provider can evict a tenant for non-payment of rent upon three days' notice to the tenant.  IA Code § 562A.27.  The

home provider must pay an $85 filing fee and serve the tenant at least three days prior to the eviction hearing.  IA Code § 648.5.  A hearing must be held within 15 days of the filing of the Complaint.  *Id.*  If the Court issues a writ of eviction, the tenant receives an order to leave within 3 days; subsequent to that, tenants are forcibly removed by the sheriff.  *Id.* § 648.22.  Iowa, like all but perhaps two states, prohibits "self help" evictions by a forcible entry and detainer statute.  Id. § 648.1. It does this specifically to deter the violence that occurred in the previous regime. *Capital Fund 85 Ltd. P'ship v. Priority Sys., LLC,* 670 N.W.2d 154, 159 (Iowa 2003).

130.  Similarly, an unlawful detainer action is a landlord's *sole* means of reacquiring possession of his residential property in Virginia. A sheriff must enforce a writ of eviction. *See* Va. Code § 8.01-470 (writs of eviction generally). A residential landlord is forbidden from taking possession of his own property. Va. Code § 55.1-1252. Instead, "[i]f a landlord unlawfully removes or excludes a tenant from the premises … the *tenant* may obtain an order from a general district court to recover possession, require the landlord to resume any such interrupted essential service, or terminate the rental agreement and, in any case, recover the actual damages sustained by him and reasonable attorney fees." Va. Code. § 55.1-1243(a).

131.  North Carolina courts also provide a landlord's sole means of eviction and regaining possession of his or her property from a tenant who has breached a

lease: "It is the public policy of the State of North Carolina, in order to maintain the public peace, that a residential tenant shall be evicted, dispossessed or otherwise constructively or actually removed from his dwelling unit only in accordance with the procedure prescribed in Article 3 or Article 7 of this Chapter." N.C. Gen. Stat. § 42-25.6; *see also id.* § 1-313 ("The execution must be directed to the sheriff[.]").

132. In South Carolina, a landlord must also utilize a court eviction process, and obtain a writ of ejectment from a judge. *See* S.C. Code § 27-40-710. The writ must be executed by a state official, and a landlord may not attempt to evict a tenant through self help. S.C. Code § 27-40-760. A landlord is also liable to a tenant for the greater of three months' rent or twice actual damages for an unlawful ouster if he attempts to evict a tenant outside the court process. S.C. Code § 27-40-660.

133. Georgia also requires residential landlords to use court eviction proceedings, and only permits eviction by a sheriff's, constable's or marshal's execution of a writ of possession. *See* Ga. Code § 44-7-55(d). Without being issued such a writ, a landlord may not retake possession of her residential property. *See id.* A landlord who resorts to self-help evictions faces criminal punishment. *See* Ga. Code § 44-7-14.1 ("Unlawful to suspend furnishing of utilities to tenant until final disposition of dispossessory proceeding.").

134. Indeed, in a majority, if not all the jurisdictions across the United States (including all of those in which Plaintiffs reside), residential home providers must

follow state eviction proceedings in order to lawfully oust tenants for nonpayment of rent.

135.    Plaintiffs are all entitled to obtain writs pursuant to state law to regain possession of their properties for nonpayment of rent.

136.    Plaintiffs' tenants currently owe unpaid rent and, except for those states that have a current state eviction moratorium backed up by the CDC Order, have no real defenses in state court other than the CDC Order.

137.    By operation of the CDC Order, Plaintiffs are unable to obtain writs of eviction pursuant to the legal processes set out by their respective state laws.

138.    So important are state-court actions in areas of primary and traditional state responsibility within our federalist system that the Supreme Court of the United States has crafted abstention doctrines to defend so that federal courts do not interfere with state court proceedings *even when federal courts have jurisdiction*. *Younger v. Harris,* 401 U.S. 37 (1971); *Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (explaining that "*Younger v. Harris* [] and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances").

139.    The Defendants' action here is without any federal authority and fails to show even the deference that *constitutionally defined branches* of the Government accord state court proceedings.

140.  Because of Defendants' unconstitutional order, Plaintiffs have no ability to legally oust their tenants for nonpayment of rent.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT V: DECLARATION THAT THE CDC EVICTION MORATORIUM IS NOT THE SUPREME LAW OF THE LAND BECAUSE IT IS NOT A LAW ADOPTED PURSUANT TO THE CONSTITUTION

141.  Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

142.  The APA requires agency action "contrary to constitutional right, power, privilege, or immunity" to be held unlawful and set aside.  5 U.S.C. § 706(2)(B).

143.  Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; … shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

144.    The Supremacy Clause grants "supreme" status only to the "*Laws* of the United States" that are "made in Pursuance" of the Constitution. *Id.* (emphasis added). An administrative order issued by a single federal bureaucrat without statutory authority fails to satisfy this explicit restriction, and it thus cannot be the "supreme law of the land" and it cannot bind "the judges in every state."

145.    "[A]n agency literally has no power to act, let alone to pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *New York v. FERC*, 535 U.S. 1, 18 (2002).

146.    "[P]reemption takes place only when and if the agency is acting within the scope of its congressionally delegated authority." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

147.    The Supremacy Clause grants "supreme" status only to the "Laws of the United States which shall be made *in Pursuance thereof*," *i.e.* in pursuance of "This Constitution." U.S. Const. Art. VI, cl. 2 (emphasis added).

148.    The conditional nature of the Supremacy Clause accords supremacy to federal statutes or regulations made "in Pursuance of" the Constitution.

149.    CDC has not identified any Act of Congress that confers upon it the power to impose a halt on residential evictions, nor is there one.

150.   CDC has not identified any Act of Congress that shows it is acting within the scope of some congressionally delegated authority to impose eviction moratoriums across the United States, nor is there one.

151.   Indeed, Section 4024 of the CARES Act, which imposed a temporary moratorium on certain evictions, contained no delegation of authority to any agency, much less CDC, and even then, it applied only to certain federally backed housing.

152.   The relevant statute "authorizes the Director to undertake certain specifically enumerated acts 'and other measures, as in [her] judgment may be necessary.' But those 'other measures' are limited by the specific examples listed. They provide the intelligible principle without which Congress' delegation of authority in this instance would be too broad to withstand Constitutional scrutiny." *Tiger Lily*, 2021 WL 1171887, at *8.

153.   The weaker the link between relevant federal statutes and the CDC Order, the weaker is CDC's ability to invoke the Supremacy Clause to deprive Plaintiffs of their right to state-court eviction process.

154.   Relatedly, the closer to a state's core traditional functions and core interests an issue is, such as regulating real property within its borders and managing its own state-court processes, the clearer any exercise of the Supremacy Clause must be. *See Terkel*, 2021 WL 742877, at *8-9 (noting that CDC's findings concern "the

police power" and criminalize "an area of traditional state concern: remedies protecting property rights").

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT VI: DECLARATION THAT THE CDC EVICTION MORATORIUM IS NOT THE SUPREME LAW OF THE LAND AND THAT IT VIOLATES THE TENTH AMENDMENT AND THE CONTRACT CLAUSE BECAUSE IT DOES NOT VALIDLY PRE-EMPT STATE LAW

155. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

156. The APA requires agency action "contrary to constitutional right, power, privilege, or immunity" to be held unlawful and set aside. 5 U.S.C. § 706(2)(B).

157. Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

158. The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

159. The relevant statute, 42 U.S.C. § 264(a), authorizes CDC to make and enforce only such regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

160. The relevant regulation, 42 C.F.R. § 70.2, also authorizes CDC only to "take measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

161. Nothing in the relevant statutes or regulations purports to give CDC the authority to order an eviction moratorium that preempts state landlord-tenant law.

162. Nothing in the relevant statutes or regulations purports to give CDC the authority to preempt the Contract Clause of Article I, Section 10 of the United States Constitution, the Contract Clauses of the state constitutions, or otherwise preempt state law protecting from governmental impairment the obligations of private contracts that are in force.

163.    Nothing in the relevant statutes or regulations gives CDC the authority to order a nationwide moratorium "to temporarily halt residential evictions to prevent the further spread of COVID-19," CDC Order, 85 Fed. Reg. at 55292, because CDC's authority is confined to undertaking measures providing for "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 U.S.C. § 264(a); 42 C.F.R. § 70.2.

164.    Although "state laws can be pre-empted by federal regulations as well as by federal statutes," *Hillsborough Cty., Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985), the relevant statute contains a savings clause, which states: "Nothing in this section or section 266 of this title, or the regulations promulgated under such sections, may be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States), except to the extent that such a provision conflicts with an exercise of Federal authority under this section or section 266 of this title." 42 U.S.C. § 264(e).

165.    The savings clause of 42 U.S.C. § 264(e) states that 42 U.S.C. § 264(a) and 42 C.F.R. § 70.2 cannot "be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States)."    In other words, the CDC is statutorily expressly

deauthorized from issuing orders such as the Order that would supersede state landlord-tenant law, or state laws forbidding impairment of contracts.

166.   The relevant state landlord-tenant laws and laws relating to the non-impairment of contracts do not conflict with CDC's authority to regulate "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings."  42 U.S.C. § 264(a).

167.   Landlord-tenant law and law relating to the non-impairment of contracts "has long been regarded as a virtually exclusive province of the States" under the Tenth Amendment upon which the federal government cannot intrude. *Sosna v. Iowa*, 419 U.S. 393, 404 (1975); *see also Terkel*, 2021 WL 742877, at *8-9 (reasoning that the CDC Order "treads into an area of traditional state concern: remedies protecting property rights").  The CDC Order displaces inherent state authority over residential evictions and therefore violates the Tenth Amendment.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

**COUNT VII: VIOLATION OF U.S. CONSTITUTION'S TENTH AMENDMENT—THE CDC EVICTION-MORATORIUM ORDER UNCONSTITUTIONALLY COMMANDEERS STATE RESOURCES AND STATE OFFICERS TO ACHIEVE FEDERAL POLICY OBJECTIVES OR EXECUTE FEDERAL LAWS**

168.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

169.   The APA requires agency action "contrary to constitutional right, power, privilege, or immunity" to be held unlawful and set aside.   5 U.S.C. § 706(2)(B).

170.   The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

171.   Under the Tenth Amendment and the anti-commandeering doctrine, CDC cannot commandeer state resources to achieve federal policy objectives or commandeer state officers to execute federal laws. CDC's Order impermissibly commandeers state courts and state officers to apply, enforce, and implement an unconstitutional federal law. *New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S. 898 (1997).

172.   CDC cannot order state courts and relevant state actors not to process summary evictions.  Home providers, like Plaintiffs, who rely on state process, run the risk of a federal prosecution for doing so.  Plaintiffs run the risk of being fined

from \$100,000 to \$500,000 and sentenced to one year in prison for invoking and utilizing relevant state laws. *See* CDC Order, 85 Fed. Reg. at 55,296.

173. But neither Congress nor CDC may "compel the States to … administer a federal regulatory program." *New York v. United States*, 504 U.S. at 188. Neither Congress nor CDC may "halt" pending or forthcoming state adjudicatory proceedings. CDC Order, 85 Fed. Reg. at 55296. And neither Congress nor CDC may modify state judicial processes by dictating that a declaration executed by a tenant shall be adequate proof or otherwise suffice to halt or suspend the judicial eviction action. *Id.* at 55292–93, 55297.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT VIII: VIOLATION OF THE NON-DELEGATION DOCTRINE UNDER U.S. CONSTITTUION ART. I, § 1

174. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

175. The APA requires agency action "contrary to constitutional right, power, privilege, or immunity" to be held unlawful and set aside. 5 U.S.C. § 706(2)(B).

176.   Article I, § 1 of the U.S. Constitution states, "*All* legislative Powers herein granted shall be vested in a Congress of the United States." (Emphasis added). The grant of "[a]ll legislative Powers" to Congress in the Vesting Clause means that Congress may not divest "powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. 1, 42-43 (1825).

177.   Whether federal legislation effects a permissible or prohibited delegation of legislative powers—and thus violates the Article I, § 1 Vesting Clause—is determined based on whether the legislation provides "an intelligible principle" to which an administering agency is directed to conform when carrying out its functions under the legislation. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). If the law fails to provide a guiding principle of that sort but instead delegates to the agency authority to establish its own policies, the legislation is invalid because it violates the Vesting Clause. *Id*.

178.   As interpreted by CDC, 42 U.S.C. § 264(a) fails to set forth any "intelligible principle" to which CDC is directed to conform. *See Tiger Lily*, 2021 WL 1171887, at *9 (reasoning that CDC's interpretation of § 264(a) reads out the statute's intelligible principle).

179.   Citing § 264(a), the CDC Order imposes a nationwide moratorium on certain residential evictions for non-payment of rent based on CDC's sole judgment that a moratorium is necessary to curb "the introduction, transmission, or spread of

communicable diseases." But if that finding is sufficient to justify the moratorium, then § 264(a) imposes no discernible limits on CDC's regulatory authority whenever virus or disease is being spread among humans in the United States.

180. Alternatively, if § 264(a) is deemed to supply a sufficient intelligible principle under current interpretation, then the non-delegation doctrine must be re-examined so so that it is conformed to the proper limits contained in the Vesting Clause of Article I, § 1.

181. As interpreted by the CDC Order, § 264(a) would also authorize CDC to prohibit all citizens from attending church services, assembling for the purpose of expressing their political views, or even leaving their own homes. It is doubtful such measures could pass constitutional muster if adopted by Congress itself; but it is beyond dispute that such measures constitute the sorts of policy decisions that the Constitution reserves to Congress alone in its role as the Nation's exclusive repository of legislative power.

182. Because § 264(a), as interpreted by CDC, fails to include an intelligible principle that imposes limits on CDC's alleged regulatory authority, § 264(a) violates the Article I, § 1 Vesting Clause and is thus invalid as applied.

183. Because § 264(a) is unconstitutional as applied here, CDC lacks any statutory authority to adopt the Order.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT IX: UNLAWFUL SUSPENSION OF LAW—NEITHER STATUTE NOR CONSTITUTION AUTHORIZES CDC TO WAIVE, DISPENSE WITH, OR SUSPEND STATE EVICTION LAWS

184.    Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

185.    Count IX is premised on 5 U.S.C. § 706(2)(B) & (C).

186.    Evictions and the laws governing when and under what circumstances a property owner can regain possession of his or her property are a function of the police power of the several states. *Cf. Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 247 (1922) (considering the New York legislature's authority to enact emergency housing laws under the state's police power). In the plaintiffs' states, like most other states, a landlord's rights and remedies upon a material breach of a rental agreement, including the right to an eviction and the recovery of possession based on nonpayment of rent, are governed by a comprehensive statutory scheme. *See, e.g.*, Iowa Code § 648 *et seq.*; Va. Code §§ 8.01-470, 55.1-1245 *et seq.*; N.C. Gen. Stat. §§ 1-313, 42-1 *et seq.*

187.   CDC's Order purports to waive or suspend the duly enacted laws that govern evictions in the several states.

188.   CDC has no authority to waive, dispense with, or suspend duly enacted state laws; nor does the Executive Branch more generally. *See Matthews v. Zane's Lessee*, 9 U.S. 92, 98 (1809) (Marshall, C.J.) ("The president cannot dispense with the law, nor suspend its operation."); *Baker v. Carr*, 369 U.S. 186, 244 n.2 (1962) ("No tribunal or department in our system of governments ever can be lawfully authorized to dispense with the laws, like some of the tyrannical Stuarts, or to repeal, or abolish, or suspend the whole body of them[.]") (quoting *Luther v. Borden*, 48 U.S. 1, 69 (1849) (Woodbury, J., dissenting)).

189.   To the contrary, the United States Constitution forbids the Executive Branch from suspending or dispensing with the law.

190.   The separation of powers enshrined in our Constitution prevents suspending or dispensing with the law through executive action, as it would effect a merger of the executive and legislative powers. *See* Philip Hamburger, *Are Health-Care Waivers Unconstitutional?* NAT'L REV. (Feb. 8, 2011), *available* at https://bit.ly/3y1HmvS ("The power to dispense with the laws had no place in a constitution that divided the active power of government into executive and legislative powers."). Suspension of laws by the Executive Branch is "a power exercised not through and under the law, but above it." *Id*.

191. The Founder's placement of the Suspension Clause (pertaining to *habeas corpus*) in Article I reflects that the U.S. Constitution continued the English common-law tradition of vesting the suspension power solely in the Legislative Branch. *See* Philip Hamburger, *Beyond Protection*, 109 COLUM. L. REV. 1823, 1919 (2009); Amanda L. Tyler, HABEAS CORPUS IN WARTIME: FROM THE TOWER OF LONDON TO GUANTANAMO BAY (2017) (chronicling the original meaning of the Suspension Clause). The limited exception for the suspension of habeas corpus "in Cases of Rebellion or Invasion" when "the public Safety may require it" proves the more general rule that duly enacted laws may not be suspended during an emergency that is neither a rebellion nor an invasion, even by Congress. U.S. Cont., art. I, § 9, cl. 2.

192. And in contrast to the legislature's suspension authority, the executive "could not, even during an emergency, seize property" or "constrain the natural liberty of persons who were within the protection of the law, unless [the executive] had legislative authorization." Hamburger, *Beyond Protection*, 109 COLUM. L. REV. at 1919.

193. CDC has not identified any Act of Congress that delegated authority to impose an eviction moratorium across the United States, nor does one exist. Section 264(a) authorizes CDC only to make and enforce regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of

animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

194. With no applicable grant of statutory authority to suspend laws, CDC has no authority to do anything with respect to the several states' comprehensive laws. *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 425 (1934) ("Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.").

195. Because CDC could not lawfully waive the application of state laws governing evictions, the Order is void *ab initio* and must fail.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT X: THE CDC ORDER EXCEEDS THE LIMITATIONS OF ARTICLE I, SECTION 8 OF THE UNITED STATES CONSTITUTION AND WOULD BE UNLAWFUL IF ENACTED BY THE CONGRESS AND SO CANNOT BE PROMULGATED BY ANY DEFENDANT

196. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

197.   The APA requires agency action "contrary to constitutional right, power, privilege, or immunity" to be held unlawful and set aside.   5 U.S.C. § 706(2)(B).

198.   The United States Constitution simply does not give the federal government the power to deny access to state courts for adjudication of claims to privately owned real property within that state.   "The Constitution creates a Federal Government of enumerated powers."   *United States v. Lopez*, 514 U.S. 549, 552 (1995).   The power CDC claims here cannot be found in the Constitution.

199.   Article I, Section 8 of the Constitution explicitly enumerates 17 powers vested in Congress and, thus, to the federal government.   It also supplies the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."   U.S. Const. art. I, sec. 8.

200.   The power to modify private residential lease agreements between home providers and tenants, and the power to bar recourse to state courts to adjudicate disputes over residential lease contracts and real property within the several states is neither explicitly nor implicitly among the federal government's enumerated powers.   *See* U.S. Const. art. I, sec. 8.   Nor is such power encompassed

in "[t]he executive Power" referenced in Article II of the United States Constitution. The federal government simply does not have that power.

201.    The Constitution does not vest the federal government with a general police power as the states have.  *Cf. Siegel*, 258 U.S. at 247 (considering the New York legislature's authority to enact emergency housing laws under the state's police power); *see also Terkel*, 2021 WL 742877, at *8-9 (explaining that the findings on which CDC relied and the scope of the CDC Order concern the states' police power). That is why CDC has traditionally claimed authority to stem the spread of disease under the Commerce Clause and likely why the CDC Order purports to regulate the spread of Covid-19 across state lines.

202.    The Commerce Clause grants Congress authority "[t]o regulate Commerce … among the several States." U.S. Const. art. I, sec.  8, cl. 3.  There is no trade in communicable diseases.

203.    The Necessary and Proper Clause grants Congress authority to "make all Laws which shall be  necessary and proper for carrying into Execution the foregoing Powers [the 17 enumerated powers], and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

204.    But the CDC Order cannot be justified under the Commerce Clause, the Necessary and Proper Clause, or the two clauses combined.  *See Terkel*, 2021 WL

742877, at *8-9 (holding that the CDC Order violates the Commerce Clause, in part, because any impact on interstate commerce is incidental).

205.    The commerce power generally falls within three broad categories: 1) regulation of the channels of interstate commerce; 2) regulation of the instrumentalities of interstate commerce; and 3) regulation of activities that substantially affect interstate commerce.  *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005).

206.    Courts determine the substantial effects test by relying not merely on the Commerce Clause, but upon the Necessary and Proper Clause as well.  *See id.* at 33-42 (2005) (Scalia, J., concurring).

207.    Regulating the eviction of residential tenants through state courts is not the regulation of a channel nor an instrumentality of interstate commerce.  Indeed, it touches on core state interests: real property within their borders and the functioning and authority of their own state courts.

208.    The eviction of tenants from private property does not substantially affect interstate commerce, especially where those tenants still owe back rent to their former home providers, and the CDC Order provides no evidence that it does.

209.    The CDC Order provides no evidence or findings supporting any claim that removing individuals who are unlawfully present on private property will have a substantial impact on the national economy.

210.    Nor is the Eviction-Moratorium Order part of some broader economic regulatory scheme that would be undercut if the federal government were not permitted to stop evictions.  There is no broader scheme.  This is simply an *ad hoc* measure beyond CDC's purview and beyond the authority of the federal government.

211.    There is currently no federal prohibition on those exposed to Covid-19 moving across state lines.

212.    There are no findings or evidence in the CDC Order that suggest a federal restriction on individuals exposed to Covid-19 moving across state lines would be undercut if the federal government could not prevent evictions from private property.

213.    The CDC Order is not even a regulation of economic activity.  In fact, it seems designed *not* to regulate economic activity.  While it is extremely damaging to Plaintiffs, the CDC relies on the fiction that no harm accrues to home providers because of the "availability" of money damages.

214.    The CDC Order by its terms does not alter the commercial obligations of tenants, such as the payment of rent.  In fact, CDC makes clear that the money is still owed.  CDC has simply removed the ancient right of eviction and deprived Plaintiffs and other home providers of their right to collect the money owed to them

for the foreseeable future—and interfered with their right to mitigate damages by re-letting the property to a new tenant for the duration of the former lease.

215. The CDC Order punishes home providers for pursuing legal proceedings under state law and for exercising their rights to remove unlawfully present persons from their property.

216. The CDC Order does not contain a limitation designed to keep it within the Constitution, such as limiting its operation to those living in federally subsidized housing, those traveling in interstate commerce, or to those who have been exposed to Covid-19.

217. The CDC Order instead, without constitutional authority, expands federal authority into areas of core state power and interest by regulating private property rights, private contracts, and the right to invoke traditional state legal proceedings.

218. The CDC Order simply facilitates "rent seeking" whereby the government rewards one (more numerous) party with the resources of another (less numerous and therefore less powerful) party.

219. The CDC Order therefore attempts to create *ex nihilo*, for the first time in our history, a tyrannical federal power nowhere provided in the U.S. Constitution nor in any of its (non-fancifully construed) provisions.

WHEREFORE, Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.

## COUNT XI: CLASS ACTION ALLEGATIONS

220. Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

221. Plaintiffs and each of them bring this action as representatives of a class pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(2) on behalf of all home providers who are injured by the CDC Order because unable to evict their non-paying, defaulting tenants under state judicial processes.

222. The class will include those whose property will be permanently devalued because of this claimed governmental power absent a court order declaring that CDC lacks such power.

223. There are two proposed classes of such people represented by Plaintiffs. First, all those home providers with properties in states that have no eviction moratoriums of their own (the "No State Moratorium Class"). Second, the home providers in states that have a "more restrictive" eviction moratorium in which the CDC Order serves as a backstop preventing any termination of a state eviction

moratorium from having practical effect (the "Backstop Class").  These are the two classes of property owners affected by the CDC Order.

224.  Plaintiffs are adequate representatives of the two classes because Plaintiffs belong to the class as property owners whose tenants are in default of their rent obligations and who wish to have them evicted in state court but cannot because of the CDC's unlawful action.

225.  The class includes thousands of such property owners across the country.  Indeed, even without NAA and NARPM, the individual plaintiffs in this suit make up the numerosity requirement by themselves.

226.  The class is so numerous that joinder of all members is impractical. The CDC Order has shut down State processes for eviction across the nation.  There are thousands of home providers affected by it.  Only an injunctive class as here proposed can shut down this unlawful federal action and return the class to its rights.

227.  The common questions of law and fact that unite the class include, but are not limited to:

    a.   whether the CDC Order is unconstitutional;

    b.   whether the CDC Order presents one or more categories of unlawful action remediable by 5 U.S.C. § 706;

    c.   whether the CDC Order is authorized by its purported authorizing statute or any other law;

d.    whether the CDC Order exceeds power granted the federal agency;

e.    whether the CDC Order is arbitrary and capricious or otherwise contrary to law.

f.    whether the CDC Order exceeds Congress's power under Article I of the United States Constitution.

g.    whether the CDC Order exceeds the Federal Government's power under the U.S. Constitution.

228.   The claims brought by Plaintiffs are typical of the class, and the Plaintiffs' representatives will fairly and adequately protect the interests of the class.

229.   The relief sought is appropriate for the class as a whole, as Plaintiffs demand vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and any other relief that may be appropriate.  This relief would equally impact the entire class.

WHEREFORE, Plaintiffs, as appropriate to each count, vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to

state courts for evictions; and any other relief that may be appropriate, including but not limited to attorneys' fees and costs.

August 18, 2021

Respectfully,

*/s/  John J. Vecchione*_____
John J. Vecchione (*pro hac vice*)
Senior Litigation Counsel
Jared McClain (*pro hac vice*)
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
John.Vecchione@ncla.legal
Jared.McClain@ncla.legal
(202) 918-6902
*Admitted Pro Hac Vice*

*/s/*_____
The Kirkwood Institute, Inc.
Alan R. Ostergren
*President and Chief Counsel*
500 Locust Street, Suite 199
Des Moines, Iowa 50309
alan.ostergren@kirkwoodinstitute.org
(515) 207-0134

*Counsel for Plaintiffs*