IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| ASA MOSSMAN, *et al.*, | : | |
| :--- | :--- | :--- |
| | : | CASE NO.: |
| | : | 1:21-cv-0028-CJW-MAR |
| *Plaintiffs*, | : | |
| v. | : | |
| U.S. CENTERS FOR DISEASE CONTROL, *et al.*, | : | |
| *Defendants*. | : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

BACKGROUND ................................................................................................................................ 2

ARGUMENT ...................................................................................................................................... 5

    I.    This Court Can Still Grant Plaintiffs Effective Relief ................................................... 5

    II.   Defendants' Voluntary Dismissal of Another Case Did Not Moot This Action ........................ 8

CONCLUSION ................................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Ala. Ass'n of Realtors v. HHS*,
 ___ S. Ct. ___, 2021 WL 3783142 (2021) .................................................................................5, 7, 16

*Ala. Ass'n of Realtors v. HHS*,
 ___ F. Supp. 3d ___, 2021 WL 1779282 (D.D.C. May 5, 2021)...................................................... 4, 14

*Ala. Ass'n of Realtors v. HHS*,
 141 S. Ct. 2320 (2021).................................................................................................................. 4, 14

*B. Thomas & Co. v. Universal Warranty Corp.*,
 2020 WL 871200 (D. Neb. Feb. 21, 2020), *aff'd*, 3 F.4th 1032 (8th Cir. 2021) ....................................7

*Bennie v. Munn*,
 822 F.3d 392 (8th Cir. 2016) .................................................................................................................12

*Charleston Housing Authority v. USDA*,
 419 F.3d 729 (8th Cir. 2005) ...................................................................................... 12, 13, 14, 15

*City of Mesquite v. Aladdin's Castle, Inc.*,
 455 U.S. 283 (1982) .................................................................................................................10, 13, 15

*Ctr. for Special Needs Tr. Admin., Inc. v. Olson*,
 676 F.3d 688 (8th Cir. 2012) ....................................................................................................... 12, 15

*DHS v. New York*,
 140 S. Ct. 599 (2020)..............................................................................................................................8

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
 528 U.S. 167 (2000) ...............................................................................................................10, 11, 13

*Genesis Healthcare Corp v. Symczyk*,
 569 U.S. 66 (2013) ..................................................................................................................................6

*Knox v. Serv. Empls. Int'l Union, Local 1000*,
 567 U.S. 298 (2012) .......................................................................................................................... 6, 10

*Lewis v. Continental Bank Corp.*,
 494 U.S. 472 (1990)................................................................................................................................6

*NLRB v. Raytheon Co.*,
 398 U.S. 25 (1970).................................................................................................................................15

*Prowse v. Payne*,
    984 F.3d 700 (8th Cir. 2021) ...................................................................................................15

*Reid v. BCBSM, Inc.*,
    787 F.3d 892 (8th Cir. 2015) .....................................................................................................7

*St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Loc. 73 v. City of St. Louis*,
    96 F.3d 323 (8th Cir. 1996) .................................................................................................9, 11

*United States v. 3698.63 Acres of Land, More or Less*,
    416 F.2d 65 (8th Cir. 1969) .......................................................................................................9

*United States v. Concentrated Phosphate Export Ass'n*,
    393 U.S. 199 (1968) ............................................................................................................11, 16

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953) .................................................................................................................10

*Walling v. Helmerich & Payne*,
    323 U.S. 37 (1944) ...................................................................................................................11

*Xiong v. State*,
    195 F.3d 424 (8th Cir. 1999) .....................................................................................................8

*Young v. Hayes*,
    218 F.3d 850 (8th Cir. 2000) ..............................................................................................11, 12

**Statutes**

42 U.S.C. § 264 ............................................................................................................................ 2, 15

Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Title V, § 502, Div. N (2021) ..........2

**Other Authorities**

*Remarks by President Biden* (Aug. 5, 2021) ............................................................................. 5, 14

*Remarks by President Biden* (August 3, 2021) ...............................................................................5

*Statement by Press Secretary Jen Psaki* (July 29, 2021) ...............................................................5

**Regulations**

April Order, 86 Fed. Reg. 16731 (April 1, 2021) .............................................................................2

Aug. Order, 86 Fed. Reg. 43244 (Aug. 3, 2021) ..............................................................................4

Feb. Order, 86 Fed. Reg. 8,020 (Feb. 1, 2021) .................................................................................2

June Order, 86 Fed. Reg. 34010 (June 1, 2021) ...............................................................................3

For a year, Defendants imposed and reimposed a nationwide eviction moratorium without lawful authority. The stop-start nature of these serial orders not only left home providers like Plaintiffs uncertain when they'd regain their constitutional and property rights, it also restricted their ability to challenge the Order in court. Because the Order was perpetually on the verge of expiring, Defendants repeatedly sought and received delays in briefing, and courts across the country hesitated to rule on the merits of a soon-to-expire order. Like clockwork, though, Defendants would reissue the Order just as it was set to expire, or in one case, just after it expired, further compounding the Plaintiffs' injuries.

After all the legal gamesmanship and claims of nearly limitless authority, the Order ended with barely a whimper. There was no public announcement to alert the public of the change in policy; instead, the Defendants quietly dismissed their appeal in a separate lawsuit in the D.C. Circuit. That voluntary dismissal, they now say, ended the moratorium. Anyone not watching the D.C. Circuit's docket is still none the wiser. For their part, Plaintiffs learned through this litigation that they could, supposedly, once again assert their property rights and rights to access their respective state courts. It's also unclear if anyone in the federal government bothered to alert the state courts that the Order is no longer in effect. Instead, CDC simply disappeared from its website the Order and corresponding declaration.

To make matters worse, CDC has not repudiated its Order nor disclaimed the authority on which the agency relied for its foray into state housing policy. Instead, it has essentially said that "this court over there has stopped us for now," but there is no reason to believe it won't act again if the political forces favor another moratorium. With only the merits decision of a single district court standing in its way, little prevents the agency from contriving a new order it deems necessary to control the spread of disease, yet again at the Plaintiffs' expense. Defendants' belated, calculated decision to forgo an appeal of a separate decision in a different circuit is nothing more than another attempt to

manipulate this Court's jurisdiction. The undisputed facts of this case are that CDC's assertion of power will continue to reduce the Plaintiffs' property values without a declaratory judgment by a Court that CDC lacks lawful authority to impose an eviction moratorium. This case is not moot.

## BACKGROUND

On September 1, 2020, then-Acting CDC Chief of Staff Nina B. Witkofsky issued the initial iteration of the Order at issue here. As set out more fully in Plaintiffs' memorandum of law supporting their pending motion for summary judgment, the Order was premised on 42 U.S.C. § 264, which authorizes CDC "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases … the [Secretary] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

The Order was initially effective until December 31, 2020, "unless extended." Sept. Order, 85 Fed. Reg. 55,292, 55,297 (Sept. 4, 2020). Congress purported to extend the Order from January 1 through January 31, 2021, in a spending bill, *see* the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Title V, § 502, Div. N. Since then, CDC has reissued its Order repeatedly. Initially, on February 3, 2021, CDC extended the Order until March 31. *See* Feb. Order, 86 Fed. Reg. 8,020 (Feb. 1, 2021). Plaintiffs filed this class-action suit while this second iteration of the moratorium was in effect, asking this Court to declare the Order unlawful and enjoin its enforcement. ECF Dkt. 1.

Then, CDC again extended its order—this time through June 30, *see* April Order, 86 Fed. Reg. 16,731 (April 1, 2021). On June 11, with the Order once again set to expire, Defendants' counsel first entered an appearance in this case and immediately moved for an extension of time in which to respond to the complaint. ECF Dkt. 17. Defendants asserted that (i) the Order was "scheduled to expire on June 30, 2021—eight days after Defendants' response to the complaint [was] due[,]" and (ii)

2

"CDC ha[d] not determined whether public health conditions [would] require an extension of the Order[.]" *Id.* at 2. This Court granted Defendants an extension until July 22. CDC then issued a one-month extension of its Order, this time to July 31. June Order, 86 Fed. Reg. 34,010 (June 28, 2021). So, CDC once again got an extension of its briefing in this Court until after the Order's new expiration date. ECF Dkt. 22, 23.

Department of Justice attorney John J. Robinson wrote undersigned counsel on July 26, 2021, of the Defendants' plan to seek dismissal for mootness when the July moratorium expired, and the parties crafted the briefing schedule under that representation. *See* E-mail of John J. Robinson (July 26, 2021) (attached at Exh. 1); *see also* E-mail of Steven A. Myers (July 31, 2021) (attached as Exh. 2) (confirming whether Plaintiffs remain unwilling to dismiss the action in light of "the White House statement and unsuccessful attempt at an extension in Congress"). On August 2, following the June Order's expiration, the parties filed a joint motion to extend the briefing schedule because "Defendants intend[ed] to move to dismiss this case as moot by August 6, 2021." ECF Dkt. 24, at 1.

But that proposed motion for mootness never came because, it turns out, Defendants kept their own attorneys in the dark about their intention to reissue. Days after representing their intention to seek dismissal, Defendants' counsel had to walk back the motion the parties had just filed because his clients surprisingly went ahead and re-issued an Order they had already admitted was unlawful. E-mail of John J. Robinson (August 3, 2021) (attached as Exh. 3). When giving alms we are enjoined not to "let thy left hand know what thy right hand doeth." *Matthew* 6:2 (King James). This is not good advice as to filings before a court, however. It is incontrovertible that the Defendants' attorneys cannot even be sure what their clients will do next.

As Defendants were stalling litigation in this Court, challenges to the unlawful Order proceeded throughout the country. One set of Plaintiffs in particular won relief against the Defendants in the U.S. District Court for the District of Columbia. *Ala. Ass'n of Realtors v. HHS*, ___

3

F. Supp. 3d __, 2021 WL 1779282, *8 (D.D.C. May 5, 2021). District Judge Dabney Friedrich ruled that the Order was unlawful but stayed her decision pending appeal. *See id.* An application to vacate Judge Friedrich's stay made its way to the Supreme Court, which issued a decision on June 29, 2021. Despite CDC announcing the Order's extension to July 31 one day before the Court's decision, Justice Kavanaugh cast the decisive vote against lifting Judge Friedrich's stay "[b]ecause the CDC plan[ned] to end the moratorium in only a few weeks, on July 31[.]" *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2320, 2321 (2021) ["*AAR I*"]. Justice Kavanaugh warned, however, that "clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31." *Id.*

Having successfully duped the Supreme Court, CDC re-issued its moratorium *yet again*, on August 3. August Order, 86 Fed. Reg. 43,244 (Aug. 3, 2021). The White House acknowledged that "the Supreme Court ha[d] made clear" that extending the moratorium was no longer possible, *Statement by Press Secretary Jen Psaki* (July 29, 2021), *available at* https://bit.ly/2VXjzAe, but ordered CDC to reinstitute the moratorium anyway. Saying the quiet part out loud, President Biden admitted that issuing the lawless order, and then appealing an adverse judicial decision, would "keep this going for a month at least—I hope longer than that." *Remarks by President Biden* (Aug. 5, 2021), *available at* https://bit.ly/2VVg7Gj; *see also Remarks by President Biden* (Aug. 3, 2021), *available at* https://bit.ly/3gcki7h ("[A]t a minimum, by the time it gets litigated, … probably give[s] some additional time[.]").

Back in the Northern District of Iowa, the Defendants finally answered the complaint on August 6 (ECF Dkt. 27), nearly five months after Plaintiffs filed suit.[1] The parties agreed to an

---

[1] Defendants took the position, however, that the administrative record would not include the August 3 Order unless Plaintiffs amended their complaint, so Plaintiffs moved to do so on August 28. ECF Dkt. 29.

4

expedited briefing schedule to finally resolve the merits of this case, which this Court entered on August 26. *See* ECF Dkt. 37.

That same day, the Supreme Court, again acting in the *Alabama Association of Realtors* case, removed Judge Friedrich's stay pending appeal, a procedural ruling which allowed the district court's injunction and declaratory order to take effect. *Ala. Ass'n of Realtors v. HHS*, ___ S. Ct. ___, 2021 WL 3783142 (2021) ("*AAR II*"). The Court's "careful review of that record ma[de] clear" that the housing providers "[wer]re **virtually certain** to succeed on the merits of their argument that the CDC has exceeded its authority." *Id.* at *1 (emphasis added). That opinion further stated, "[t]he applicants not only have a substantial likelihood of success on the merits—it is difficult to imagine them losing." *Id.* at *3.

Plaintiffs filed their motion for summary judgment four days after the Supreme Court's order, on August 31. ECF Dkt. 38. Five days after that, Defendants sought again to delay the briefing schedule. ECF Dkt. 41, 42. Plaintiffs opposed that same day, noting that this was the Defendants' second attempt at claiming mootness and explaining that if Defendants believed the U.S. District Court for the District of Columbia's decision was "a definitive and binding ruling that CDC lacks the lawful authority to issue an eviction moratorium, the proper course is for Defendants to consent to this Court's entry of judgment in favor of Plaintiffs—not to dismiss Plaintiffs' case." ECF Dkt. 43, at 1-2. This Court granted the Defendants' motion to stay summary-judgment briefing so Defendants could file the motion to dismiss now at issue. ECF Dkt. 44.

## ARGUMENT

### I. This Court Can Still Grant Plaintiffs Effective Relief

Mootness ensures that a case or controversy exists at all stages of the litigation. *Genesis Healthcare Corp v. Symczyk*, 569 U.S. 66 (2013). An intervening circumstance may moot a case if it deprives the plaintiffs of their "personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank*

5

*Corp.*, 494 U.S. 472, 477 (1990). The doctrine, however, is a relatively weak constraint on a court's jurisdiction. "A case becomes moot *only* when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *Knox v. Serv. Empls. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (emphasis added).

As a threshold matter, Defendants have not demonstrated that a decision entered by a district court in a separate jurisdiction, in litigation with different plaintiffs, in which they belatedly and voluntarily chose to abandon an appeal, made it *impossible* for this Court to grant effective relief to the Plaintiffs here. *See id.*

Although the Supreme Court's rationale was forceful in lifting Judge Friedrich's stay pending appeal, the Court was considering only the *likelihood* the plaintiffs in that case would succeed on the merits. *See AAR II*, 2021 WL 3783142, at *1. The Court did not have a merits appeal before it, and the Defendants' decision to drop their appeal ensured that the Court never would in that case. The ruling on the merits came from another district court, in a completely different circuit. Even though Defendants begrudgingly decided to abandon their challenge to their district-court loss in the *Alabama Association of Realtors* litigation, that strategic litigation maneuver does nothing to unambiguously terminate the legal issues presented in this case. Nor does it deprive this Court of its authority to issue the Plaintiffs a judgment declaring that Defendants cannot do this again, one which Plaintiffs can enforce in their own right.

Plaintiffs in this action were not party to the District of Columbia action and, consequently, are not entitled to the full benefit of Judge Friedrich's decision. Neither this Court—nor any other court in the country—is bound by that decision. *See Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 n.2 (8th Cir. 2015) ("[A] district court decision binds no judge in any other case, save to the extent that doctrines of preclusion (not stare decisis) apply."); *B. Thomas & Co. v. Universal Warranty Corp.*, 2020 WL 871200, at *7 (D. Neb. Feb. 21, 2020) ("[T]his Court is not obligated to follow Judge Bataillon's

6

conclusion in a different case between different parties, even if the findings in the case were applicable to the present dispute."), *aff'd*, 3 F.4th 1032 (8th Cir. 2021); *cf. also Xiong v. State*, 195 F.3d 424, 426 (8th Cir. 1999) (holding that district courts within the Eighth Circuit are bound only by the Eighth Circuit and the Supreme Court).

The nature of the challenged Order, and the Defendants' actions through litigation over the Order's legality, make it reasonably likely that Plaintiffs outside the District of Columbia will continue to suffer under the Order. Defendants relied on (and commandeered) state courts for enforcement of their Order. Like Plaintiffs and their tenants, those state-court judges were not party to and are not bound by Judge Friedrich's judgment.[2] If state courts outside the District of Columbia ignore Judge Friedrich's order (or simply don't know it exists since Defendants have never publicly repudiated their Order), or if Defendants contrive a new rationale for yet another iteration of the Order to stall evictions, there is no legal mechanism by which Plaintiffs can move to enforce Judge Friedrich's order. Plaintiffs here could not go into D.C. Court and enforce that order should Defendants violate it. To ensure that the Order is unenforceable against Plaintiffs, they need a judgment to which they are a party or a judgment from a court whose jurisdiction encompasses them.

Moreover, without an enforceable judgment against Defendants declaring that the Order was unlawful and CDC lacked lawful authority to issue it, Plaintiffs will continue to suffer harm. As outlined in their sworn declarations (appended to the pending motion for summary judgment), several Plaintiffs have explained in detail the impact that CDC's continued claim of authority has on their property value. ECF Dkt. 38-2 ("App'x"), at 2 ¶ 4; 4 ¶ 4; 6-7 ¶¶ 12-13; 9 ¶ 5; 12 ¶ 6; 16 ¶ 5; 19 ¶¶ 13-

---

[2] Questions about the propriety and enforceability of a nationwide injunction may also undermine Judge Fredrich's order. *See DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch & Thomas, JJ., concurring in grant of stay) ("Injunctions like these [] raise serious questions about the scope of courts' equitable powers under Article III.") (collecting authorities).

7

15; 36-37 ¶¶ 7-9; 39 ¶ 7; 41-42 ¶¶ 7-9; 44-45 ¶¶ 13-15; 47 ¶¶ 8-10; ECF Dkt. 46-1 ("Decl. of Sarah Schoeffler").

> For example, Mrs. Schoeffler explained that the value of her property has been
>
> diminished because of the CDC Eviction Moratorium. Unless a court rules it is illegal the very fact that this moratorium could go on or happen again makes the property less valuable. We were denied access to our property and even to the relief the courts are supposed to provide and that is an irreparable harm to us, our property and our rights.

ECF Dkt. 46-1, ¶ 8.[3] Similarly, 7M has reported that their attempts to sell their property have been unavailing because the Order has damaged their property's market value. App'x at 43-44 ¶¶ 5-6.

Absent a judgment declaring the CDC Order unlawful and enjoining its enforcement and the issuance of any similar order, all Plaintiffs and their members will continued to be injured by a permanent reduction in their properties' value and the ever-present threat that Defendants may deprive them of their access to those properties and to their state landlord-tenant courts.

Accordingly, the Defendants' dismissal of their appeal in the D.C. Circuit has not "*completely and irrevocably* eradicated the effects of the alleged violation[.]" *St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Loc. 73 v. City of St. Louis*, 96 F.3d 323, 329 (8th Cir. 1996). Plaintiffs still have a concrete interest in this case, and this Court can issue effective relief. *See Knox*, 567 U.S. at 507. This case is not moot.

## II. Defendants' Voluntary Dismissal of Another Case Did Not Moot This Action

Moreover, this case is not moot because the Defendants' decision to voluntarily withdraw their appeal in another lawsuit does not deprive this Court of its jurisdiction. Although this Court has jurisdiction to review only "cases and controversies," "[i]t is well settled that 'a defendant's voluntary

---

[3] An owner's testimony is admissible evidence tending to show the value of their property. *See, e.g.*, *United States v. 3698.63 Acres of Land, More or Less*, 416 F.2d 65, 67 (8th Cir. 1969) ("The testimony of each of the landowners was admissible under both the federal and state rules of evidence.").

8

cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). "Such abandonment is an important factor bearing on the question [of] whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Otherwise, "courts would be compelled to leave the defendant free to return to his old ways." *Friends of Earth*, 528 U.S. at 189 (cleaned up). To prevent defendants from manipulating the courts' jurisdiction, the standard the Supreme Court "ha[s] announced for determining whether a case has been mooted by the defendant's voluntary conduct is *stringent*[.]" *Id.* (emphasis added); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[T]o say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement.").

Consequently, "[v]oluntary discontinuance of an alleged illegal activity" does not deprive the court of its judicial power when, for instance, the defendant has "consistently urged the validity" of the challenged behavior and "would presumably be free to resume" that conduct unless the court restrained the behavior. *Walling v. Helmerich & Payne*, 323 U.S. 37, 43 (1944). Voluntary cessation moots a case *only* "if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). Moreover, the interim events must "have *completely and irrevocably* eradicated the effects of the alleged violation[.]" *St. Louis Fire Fighters*, 96 F.3d at 329. Importantly, the party asserting mootness bears the "formidable," "heavy burden of persuading the court" that "the challenged conduct cannot reasonably be expected to start up again." *Friends of Earth*, 528 U.S. at 190.

9

The Eighth Circuit has not hesitated to reject the government's suggestion of mootness when its actions leave any doubt about whether it will resume the challenged conduct. For instance, the defendant in *Young v. Hayes* was a City Attorney who had threatened to fire her subordinate for participating with the Governor's office in a clemency proceeding. 218 F.3d 850, 852 (8th Cir. 2000). Despite the defendant's subsequent walking back of that threat, the Court held the case wasn't moot, in part, because, "even if we assume that Ms. Hayes's withdrawal of her prior statement about firing Ms. Geiler [wa]s full and ungrudging, we have nothing more than the voluntary cessation of allegedly illegal activity." *Id.*

The Court reached the same conclusion when North Dakota stopped its challenged conduct but "expressly reserved the right to apply its regulations against the [plaintiff] in the future." *Ctr. for Special Needs Tr. Admin., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012). Despite the state's claim that there was no live dispute about the regulations at issue, the Court reasoned that it maintained jurisdiction because "th[e] case would not exist but for the differing interpretations" of the regulation. *Id.*; *see also Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (holding that regulators' voluntarily ending improper inquiries did not moot a case because "the department still ha[d] regulatory authority over [the plaintiff] and the state regulators' assurances that they know better than to retaliate against him again are not enough to make it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur'") (citation omitted).

And in *Charleston Housing Authority v. USDA*, the Eighth Circuit rejected the government's suggestion of mootness when its actions outside of court "belie[d] its claim that it no longer intend[ed]" to resume the challenged conduct. 419 F.3d 729, 740 (8th Cir. 2005). Although the Housing Authority said it would cease its attempt to convert the property at issue, it continued to try to quiet title on the property. *Id.* Further, and important to this case, the Court looked to the timing of the government's cessation and determined that it "appear[e]d more akin to strategic, litigation-

10

related acts rather than elements of long-range planning." *Id.* Accordingly, it was reasonable to expect that the defendants would subject the plaintiffs "to the same action in the future, *even if under a slightly different plan.*" *Id.* (emphasis added). This possible recurrence, the Court concluded, "[wa]s not so remote or speculative" to divest its jurisdiction. *Id.*

Similarly, the government's past conduct can undermine its mootness claim. In *Aladdin's Castle*, the Supreme Court asserted jurisdiction even after the city-defendant repealed the objectionable statutory language at issue. 455 U.S. at 289. According to the Court, the repeal did not preclude the city "from reenacting precisely the same provision if the District Court's judgment were vacated." *Id.* The city could not carry its burden of proving that voluntary cessation mooted the case because it had previously tried reenacting a different provision after having withdrawn it "in obvious response to the state court's judgment." *Id.* The Court concluded, then, that there was "no certainty" that the city wouldn't pursue a similar course of conduct "if its most recent amendment were effective to defeat federal jurisdiction." *Id.*

Even if Plaintiffs could somehow enjoy the full benefit of Judge Friedrich's decision, which they do not as they could not enforce it, CDC's reluctant acceptance of that judgment is still not enough to carry Defendants' "formidable," "heavy burden" of proving that this case is moot. *See Friends of Earth*, 528 U.S. at 190. Nearly every action Defendants have taken related to these lawsuits betrays just how strategically they have acted to manipulate the jurisdiction of the federal courts, prolong the enforcement of a blatantly unlawful Order, and avoid an adverse judgment on the merits. Plaintiffs have already highlighted the stop-start nature of the Order, President Biden's remarks, and the Defendants' repeated rush to dismiss this case rather than addressing the merits of their actions. The challenged eviction moratorium has never been in effect for more than a few months at a time, even though it was cumulatively in effect for nearly a year. CDC habitually issued last-minute extensions of what were otherwise limited-duration orders—four times in all. These limited periods

11

of effectiveness allowed Defendants to avoid an adverse ruling on the merits. Justice Kavanaugh, for instance, cast the deciding vote to *not* intervene in late June in express reliance on CDC's "plans to end the moratorium in only a few weeks, on July 31[.]" *AAR I*, 141 S. Ct. at 2320. And as the President later explained, CDC duped the Court and planned to drag out litigation of yet another iteration of the Order. *See Remarks by President Biden* (August 5, 2021). In other words, the President, directing CDC's actions at issue here, sought to keep intact an unlawful order by avoiding review of CDC's moratorium through the delay tactics associated with litigation. And it has *worked* so far. Despite issuing *two* decisions, the Supreme Court has yet to issue a final judgment on the merits.

But that's not all. The strategic dismissal of the D.C. Circuit appeal on which Defendants now rely to claim mootness came *nearly a full month* after the Supreme Court, in the Defendants' words, "made clear that further review would be futile." ECF Dkt. 45-1, at 3 (quoting *AAR*, Doc. No. 1912768 (D.C. Cir. Sept. 3, 2021)). Even accepting the Defendants' theory of mootness, their actions once again show a willingness to abuse judicial processes to keep an unlawful order in effect for as long as possible. And because the Supreme Court has still never ruled on the merits, these "repeat offenders" have wiggle room to violate the law again, "even if under a slightly different plan." *Charleston Housing Authority*, 419 F.3d at 740.

Just as in *Aladdin's Castle*, the Defendants' past behavior can leave this Court with "no certainty" that they won't pursue a similar course of conduct in the future absent a court order. *See* 455 U.S. at 289. At every step of the way, Defendants have tested legal and ethical boundaries in order to continue violating the law. In this very case, Defendants head-faked their own lawyers as to their intentions to maintain the lawless Order. *See* Exhs. 1, 2. These actions are "strategic, litigation-related acts rather than elements of long-range planning," and they "belie [their] claim" that this action is moot. *See Charleston Housing Authority*, 419 F.3d at 740. There is no reason left to expect them to abide by the law now. *See NLRB v. Raytheon Co.*, 398 U.S. 25, 27-28 (1970) ("Nothing in the record here

12

shows that the specific acts complained of have not been repeated or gives any assurance that they will not be repeated again.").

Indeed, even though courts sometimes give slightly more leeway to governmental defendants claiming mootness, based on a presumption that the government is "unlikely to resume illegal activities," *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021), there is absolutely no reason for such a presumption in this case given the Defendants' conduct. Defendants' motion to dismiss is careful to never concede that its actions were unlawful or that CDC does not have the power it claimed in extending the Order again and again and again. Instead, they have merely admitted that a different district court ruled against them, in a different case, involving different litigation. Their position offers no assurance that they agree with Judge Friedrich's decision. The underlying statute, 42 U.S.C. § 264, is still in effect, unchanged, and we know by now precisely how expansively CDC interprets this law, as it has always asserted that its interpretation in this case is correct. As was the case in *Olson*, Defendants are essentially reserving the right to act unlawfully in the future, and this case "would not exist but for the [parties'] differing interpretations" of the law. 676 F.3d at 697. That dispute between the parties is still very much live.

Nothing is stopping CDC from issuing a reinvigorated eviction moratorium, or, as the Supreme Court warned, "mandat[ing] free grocery delivery to the homes of the sick or vulnerable," "[r]equir[ing] manufacturers to provide free computers to enable people to work from home," or "[o]rder[ing] telecommunications companies to provide free high-speed Internet service to facilitate remote work." *AAR II*, 2021 WL 3783142, at *3. Absent any formal repudiation by the agency—or an order from this Court on behalf of Plaintiffs—it is not "absolutely clear" that the challenged behavior won't continue. *See Concentrated Phosphate*, 393 U.S. at 203. The all too realistic threat remains, hanging like a Sword of Damocles over the heads of Plaintiff property owners, that CDC could take new action.

13

It's really no wonder Defendants want this case to be dismissed. As they have all along, they want to avoid a final judgment that will tie their hands in the future and prevent them from further exploiting their overly broad reading of CDC's statutory authority.[4] The voluntary-cessation exception applies to ensure this Court retains its equitable authority to prevent Defendants from once again straying into state housing policy, at the expense of the Plaintiffs' property and constitutional rights.

## CONCLUSION

This Court should deny CDC's motion to dismiss this appeal.

Dated: September 27, 2021

Respectfully,

/s/ Jared McClain
John J. Vecchione (*pro hac vice*)
Senior Litigation Counsel
Jared McClain (*pro hac vice*)
Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th St. NW, Suite 450
Washington, DC 20036
John.Vecchione@ncla.legal
Jared.McClain@ncla.legal
(202) 869-5210
*Counsel for Plaintiffs*

/s/ Alan R. Ostergren
The Kirkwood Institute, Inc.
Alan R. Ostergren
*President and Chief Counsel*

---

[4] For instance, imagine Defendants enter a new eviction moratorium and manage to convince the issuing district court in *AAR* or the D.C. Circuit (or even Supreme Court) on appeal that the entry of a nationwide injunction there was improper on one or more grounds, then as sure as night follows day, they would argue here that without a specific judgment against them in this litigation, they are free to enforce such a moratorium against each and every Plaintiff in this case, were this Court to have issued a dismissal on mootness grounds. Plaintiffs would then have to file a new complaint and hope that the next time around they can finally obtain a judgment on the merits without Defendants once again evading review. Entering a judgment here and now is thus modest relief. It does nothing more than commit the federal government to ending the unlawful series of successive moratoria as applied to Plaintiffs in this case in light of the Supreme Court's ruling in *AAR II* that CDC lacks the power it claims.

14

500 Locust Street, Suite 199
Des Moines, Iowa 50309
alan.ostergren@kirkwoodinstitute.org
(515) 207-0134

15

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

>*/s/ Jared McClain*
>Jared McClain
>*Counsel for Plaintiffs*