# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ASA MOSSMAN, et al., | |
| Plaintiffs, | No. 21-CV-28-CJW-MAR |
| vs. | **ORDER** |
| UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION, et al., | |
| Defendants. | |

_____

## I.  INTRODUCTION

This matter is before the Court on defendants' motion to dismiss plaintiffs' Amended Complaint as moot. (Doc. 45). Plaintiffs timely filed a resistance. (Doc. 49). Defendant timely filed a reply. (Doc. 50). For the following reasons, the Court **grants** defendants' motion.

## II.  RELEVANT BACKGROUND & PROCEDURAL HISTORY

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116–136. Included in the CARES Act was a temporary moratorium on evictions from certain federally backed housing that expired on July 24, 2020. *Id.* at § 4024.

On September 1, 2020, defendant Acting Chief of Staff of the Centers for Disease Control and Prevention ("CDC") Nina Witkofsky issued a nationwide order ("Order") that was not limited to federally backed housing, which went into effect on September 4, 2020. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55292 (Sept. 4, 2020). The Order cited to Section 361 of the Public

Health Service Act, 42 U.S.C. 264, and 42 C.F.R. 70.2 as the sources of its authority. *Id. See* 42 U.S.C. 264 ("The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases . . . .") & 42 C.F.R. 70.2 (providing similar authority for Director of the Centers for Disease Control and Prevention).

To invoke the Order's protections, a tenant needed to complete and sign a declaration certifying under the penalty of perjury that they were unable to pay rent "due to substantial loss of household income, loss of compensable hours of work or wages, lay-offs, or extraordinary out-of-pocket medical expenses;" "us[ed] best efforts to make timely partial payments that are as close to the full payment as . . . circumstances permit"; "used best efforts to obtain all available government assistance for rent or housing"; earned less than $99,000 per year, if an individual (or $198,000 for joint filers); and were "likely to become homeless" if evicted. *Id.* at 55293, 55297. Landlords found in violation of the Order were subject to a $100,000 fine if the violation did not result in death, or a $250,000 fine with possible incarceration if it did. *Id.* at 55296.

According to its terms, the Order was effective September 4, 2020, through December 31, 2020, unless extended. *Id.* at 55297. Congress extended the Order until January 31, 2021. *See* Consolidated Appropriations Act of 2021, Pub. L. No. 116-620, Title V, § 502, Div. N. On February 3, 2021, the CDC extended the Order until March 31, 2021. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 8,020 (Feb. 1, 2021).

Meanwhile, on March 18, 2021, plaintiffs filed their complaint against defendants in this Court. (Doc. 1). Plaintiffs are individual landlords, members of the National Apartment Association, and members of the National Association of Residential Property Managers. (*Id.*). Defendants are the CDC, its leaders, and related agencies. (*Id*). Since

plaintiffs filed their complaint, activity in this case has somewhat ebbed and flowed depending on the proximity to the current order's current expiration date. For instance, the CDC extended the Order until June 30, 2021. Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19, 86 Fed. Reg. 16,731 (April 1, 2021). On June 11, 2021, defendants' counsel first entered an appearance and requested an extension of time to answer the complaint in light of the then-expiration date of June 30. (Doc. 17). Magistrate Judge Mark A. Roberts granted an extension until July 22, 2021. (Doc. 18). In June, the CDC extended the Order again, this time until July 31, 2021. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 34,010 (June 28, 2021). Defendants asked for another extension in anticipation of the Order's new expiration date, which plaintiffs did not resist. (Doc. 22).

As this case wound through the early stages of litigation, *Alabama Association of Realtors v. U.S. Department of Health and Human Services* addressed the core issues in dispute here. In early May, the United States District Court for the District of Columbia ("D.C. District Court") found that the CDC did not possess the statutory authority to issue or extend a nationwide eviction moratorium as provided for in the Order. *Ala. Ass'n of Realtors v. HHS,* No. 20-cv-3377, 2021 WL 1779282, at *8 (D.D.C. May 5, 2021). Accordingly, the D.C. District Court held that the order violated the constitutional separation of powers and ordered that it be set aside. *Id.*, at *9–10. On May 14, 2021, however, the district court stayed its order pending appeal because it found "the CDC's nationwide eviction moratorium raises serious legal questions." *Ala. Ass'n of Realtors v. HHS,* No. 20-cv-3377, 2021 WL 1946376, at *5 (D.D.C. May 14, 2021). The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") upheld the district court stay on June 2, 2021. *See Ala. Ass'n of Realtors v. HHS,* No. 21-5093, 2021 WL 2221646, at *1 (D.C. Cir. June 2, 2021).

On June 29, 2021, as the Order's expiration loomed, the Supreme Court considered the plaintiffs' appeal from the D.C. Circuit's ruling. *See generally Ala Ass'n of Realtors v. HHS*, 141 S. Ct. 2320 (2021). The Court denied the application to vacate the stay but did not issue an opinion. *See id.* at 2320. Four justices, however, would have vacated the stay. *Id.* A fifth justice, Justice Brett Kavanaugh, concurred in affirming the stay but wrote a three-sentence concurrence to clarify that his vote turned on the fact that the Order was set to end "in only a few weeks, on July 31." *Id.* at 2321. According to Justice Kavanaugh, "clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31." *Id.*

Following the Order's expiration, President Joe Biden addressed its constitutional concerns at a press conference on August 3, 2021.[1] There, the President remarked that "the courts made it clear that the existing moratorium was not constitutional; it wouldn't stand." *Id.* Addressing rumors of a new partial eviction moratorium, the President stated that "[t]he bulk of the constitutional scholarship says that it's not likely to pass constitutional muster. . . .. But there are several key scholars who think that it may and it's worth the effort." *Id.* The President concluded that "at a minimum, by the time it gets litigated, it will probably give some additional time" to Americans in need. *Id.*

On August 3, later that same day, the CDC issued a second order ("Second Order"), extending the eviction moratorium until October 3, 2021.[2] Thus, by August 6, 2021, when defendants filed their answer in this Court, (Doc. 27), they were no longer

---

[1] *Remarks by President Biden on Fighting the COVID-19 Pandemic*, WHITE HOUSE (Aug. 3, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/03/remarks-by-president-biden-on-fighting-the-covid-19-pandemic (last accessed Oct. 7, 2021).

[2] Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, CDC (Aug. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/communication/Signed-CDC-Eviction-Order.pdf (accessed via http://web.archive.org/web/20210825055139/https://www.cdc.gov/coronavirus/2019-ncov/communication/Signed-CDC-Eviction-Order.pdf) (as of Aug. 25, 2021).

arguing to dismiss the case on grounds that it was moot because the Second Order was in effect. As the President described at an August 5, 2021 press conference, the rationale justifying the Second Order was the rapid spread of COVID-19 via the Delta variant.[3] The President explained: "[W]e did not try to continue the existing moratorium; it was a different moratorium with another rationale. The rationale was that because of the COVID spread of the virus so rapidly, that—and the Delta COVID . . . ."[4] The CDC's explanation was consistent with the President's remarks. As the CDC explained in the Order's text, it "issu[ed] a new order temporarily halting evictions in counties with heightened levels of community transmission in order to respond to recent, unexpected developments in the trajectory of the COVID-19 pandemic, including the rise of the Delta variant."[5]

Upon its review of the Second Order, the D.C. District Court observed that the new eviction moratorium applied only "in the U.S. count[ies] experiencing substantial or high levels or community transmission of SARS-CoV-2 as defined by CDC." *Ala. Assoc. of Realtors v. HHS*, 2021 WL 3577367, at *2 (D.D.C. Aug. 13, 2021). There, the plaintiffs filed an emergency motion to vacate the stay, which the district court denied. *Ass'n of Realtors v. HHS,* No. 20-3377, 2021 WL 3577367, at *1 (D.D.C. Aug. 13, 2021). The D.C. Circuit again upheld the stay. *Ala. Ass'n of Realtors v. HHS,* No. 21-

---

[3] *Remarks by President Biden on Strengthening American Leadership on Clean Cars and Trucks*, WHITE HOUSE (Aug. 5, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/05/remarks-by-president-biden-on-strengthening-american-leadership-on-clean-cars-and-trucks (last accessed Oct. 7, 2021).

[4] *Id*.

[5] Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, CDC (Aug. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/communication/Signed-CDC-Eviction-Order.pdf (accessed via http://web.archive.org/web/20210825055139/https://www.cdc.gov/coronavirus/2019-ncov/communication/Signed-CDC-Eviction-Order.pdf) (as of August 25, 2021).

5093, 2021 WL 3721431, at *1 (D.C. Cir. Aug. 20, 2021).

The Supreme Court granted plaintiffs' emergency motion to vacate the stay. In a six-to-three per curiam opinion, the Supreme Court wrote that the plaintiffs "not only have a substantial likelihood of success on the merits—it is difficult to imagine them losing." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021). The Court found the government's statutory support for the CDC's power to issue a nationwide eviction moratorium to be a "wafer-thin reed on which to rest such sweeping power." *Id.* at 2489. (citing Section 361(a) of the Public Health Service Act, corresponding to 42 U.S.C. § 264). The Court also found the "equities d[id] not justify depriving the applicants of the District Court's judgment in their favor." *Id.* In so doing, the Court asserted separations-of-powers concerns, citing *Youngstown Sheet & Tube Co. v. Sawyer* for the proposition that "even the Government's belief that its action 'was necessary to avert a national catastrophe' could not overcome a lack of congressional authorization." *Id.* (quoting *Youngstown Sheet*, 343 U.S. 579, 582 (1952)). Thus, the Court found "[i]t is up to Congress, not the CDC, to decide whether the public interest merits further action here." *Id.*

Back in the Northern District of Iowa, plaintiffs continued to pursue their claims. On August 24, 2021, plaintiffs filed their Amended Complaint. (Doc. 34). On August 30, 2021, plaintiffs filed a motion for partial summary judgment. (Doc. 38). On September 3, 2021, defendants filed a motion to stay briefing on summary judgment and class certification pending disposition of a forthcoming motion to dismiss the case as moot. (Doc. 42). The Court granted defendants' motion. (Doc. 44). On September 13, 2021, defendants filed their motion to dismiss plaintiffs' claims as moot based on the Supreme Court and D.C. District Court rulings in *Alabama Association of Realtors v. U.S. Department of Health and Human Services*. (Doc. 45).

Plaintiffs allege defendants caused them to suffer irreparable harm because the

CDC's Order and Second Order have prevented them from evicting tenants and recovering their property. (Doc. 34, at 19–32). According to plaintiffs, "the very existence of the [orders] had the natural consequence of emboldening and causing tenants to cease paying rent." (*Id.*, at 9). Plaintiffs allege that each plaintiff lost several thousand to nearly a hundred thousand dollars in lost rent and property damage because they could not evict tenants for nonpayment. *See id.* Plaintiffs further assert they are also unable to access the properties they own. *See id.* Finally, plaintiffs assert that the CDC's Order and Second Order are inherently unjust because they do not allow plaintiffs to contest their tenants' self-certification of financial hardship. (*Id.*, at 31–32).

Specifically, plaintiffs bring eleven claims, alleging: (1) unlawful agency action under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A–C), by exceeding statutory and regulatory authority; (2) unlawful agency action under the Administrative Procedure Act, 5 U.S.C § 706(2)(A), by issuing arbitrary and capricious orders; (3) Due Process violations for denying plaintiffs' right to contest their tenants' self-certified declaration of financial hardship; (4) violation of their right to access courts under the United States Constitution by denying the plaintiffs' only lawful means of evicting delinquent tenants; (5) the orders are not constitutional and therefore cannot preempt other laws; (6) Tenth Amendment and Contract Clause violations because the orders do not validly preempt state law; (7) Tenth Amendment violation because the orders unlawfully commandeer state resources; (8) violation of the Non-Delegation Doctrine under U.S. Constitution Art. 1 § 1; (9) unlawful suspension of law; (10) that the Orders exceeded Article 1, Section 8 powers and would be unlawful if enacted by Congress; and (11) plaintiffs' right to certify a class action. (*See* Doc. 34). Of this Court, plaintiffs request:

> vacatur of the CDC Order, setting it aside; a declaratory judgment against the CDC Order, holding it invalid; an injunction prohibiting its enforcement and prohibiting the entry, reentry, promulgation, or extension of the CDC Order or any order like it denying access to state courts for evictions; and

7

any other relief that may be appropriate, including but not limited to attorneys' fees and costs.

(*Id.*, at 70–72).

Defendants now ask that the Court dismiss all of plaintiffs' claims as moot. (Doc. 45).

### III. APPLICABLE LAW

"Article III of the Constitution limits the judicial power of the United States to the resolution of Cases and Controversies . . . ." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007) (internal quotation marks omitted). "When a case . . . no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it." *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 393 U.S. 486, 496 (1969).

Mootness, however, will not necessarily end a case. The Supreme Court has recognized two exceptions to the rule that mootness prevents the case or controversy from being ongoing. First, a moot case may nonetheless be actual and ongoing where "a significant fact in the litigation" is "capable of repetition, yet evading review" before litigation can survive the trial and appellate stages. *Roe v. Wade*, 410 U.S. 113, 125 (1973) (quotation marks removed). Second, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotation marks omitted). Even if the defendant's cessation is voluntary, however, it will not prevent mootness where the defendant "show[s] that the challenged behavior cannot reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 97 (2013). Where "it [i]s entirely 'speculative' that any

similar claim would arise in the future," the voluntary cessation doctrine will not apply and the case is considered moot. *Id.* at 92 (quoting *Deakins v. Monaghan*, 484 U.S. 193, 201 n.4 (1988)).

## IV. ANALYSIS

Defendants argue the Court should dismiss plaintiffs' claims because they are moot following the Supreme Court and D.C. District Court rulings and their nationwide effect. (Docs. 45-1, at 8–11; 50, at 2–4). Accordingly, defendants argue that any ruling on the merits of this case would constitute an advisory opinion, divorced from any ongoing case or controversy as required by the Constitution. (Doc. 45-1, at 10–11). In response, plaintiffs argue the case is not moot because the Court can still grant relief. (Doc. 49, at 9–12). Plaintiffs assert this is because the Supreme Court did not rule on the merits of the case, so its rationale is not law. (*Id.*, at 10). Further, plaintiffs argue this Court can hear this case because the Court is not bound to follow the decisions of other district courts. (*Id.*, at 10–11). Plaintiffs also argue that even if the Court finds the case is moot, the voluntary cessation exception applies because defendants have intentionally evaded judicial review. (*Id.*, at 12–18). Defendants, however, argue no exception to mootness applies. (Docs. 45-1, at 11–13; 50, 4–5). Regarding the voluntary cessation exception, defendants argue their cessation was court-ordered, not voluntary, and plaintiff cannot show it is reasonable to expect that they will reinstitute the order. (Docs. 45-1, at 13; 50, 4–5).

### A. Mootness

The Court finds this case is moot. Plaintiffs are correct that the D.C. District Court ruling does not bind the Court. (*See* Doc. 49, at 10–11). It does bind defendants, however, and with nationwide effect. Plaintiffs assert the fact that they cannot benefit from the ruling as evidence that their claims are not moot. (*Id.*, at 15). The ruling, however, rendered plaintiffs' claims moot for another reason. Specifically, the D.C.

9

District Court held there was no statutory support for the orders. *Ala. Ass'n of Realtors v. HHS*, 2021 WL 1779282, at *10 ("Does the Public Health Service Act grant the CDC the legal authority to impose a nationwide eviction moratorium? It does not."). As plaintiffs admit, defendants dismissed its appeal of the D.C. District Court's decision and are no longer enforcing their Second Order. (Doc. 49, at 16). Thus, the eviction moratorium is no longer in place and plaintiffs are no longer subject to it. (*Id.*). In their complaint, plaintiffs request that the Court free them of this order, whether by vacatur, declaratory judgment, or injunction. (Doc. 34, at 70–72). After the district court ruling, however, such remedies no longer apply.[6] Thus, there is no existing order for this Court to vacate, issue a declaratory judgment against, or enjoin. Accordingly, the issue of whether defendants' eviction moratorium exceeds statutory authority is no longer live. Thus, the case is moot and the Court does not have jurisdiction to hear it.

### B. *Voluntary Cessation*

The Court finds the voluntary cessation exception to mootness does not apply here. Even viewing the evidence in the light most favorable to the plaintiff and interpreting defendants' past actions as evading judicial review, the current circumstances are sufficiently different such that the Court cannot say it is reasonable to expect that defendants will reinstate an order requiring an eviction moratorium. To be sure, defendants are legally barred from reinstating the order anywhere in the country.

In arguing that the voluntary cessation exception applies, plaintiffs argue that (1) defendants' cessation was voluntary and (2) it is reasonable to expect another comparable order from defendant CDC. (Doc. 49, 5, 8–18). The Court considers

---

[6] Absent a contractual agreement, awarding attorneys' fees and costs to plaintiffs would only be appropriate if they were the prevailing party and statutory authority or an equitable determination supported such an award. But no party has prevailed because no case has been tried. *Allied Sys., Ltd. v. Teamster Auto. Transp. Chauffers, Demonstrators and Helpers*, 304 F.3d 785, 793–94 (8th Cir. 2002).

plaintiffs' arguments in turn.

### *1. Voluntariness*

Plaintiffs argue that defendants' cessation was voluntary. First, they note defendants dismissed their appeal of the August 26 district court ruling. (Doc. 49, at 12). Plaintiffs argue this shows defendants chose to abandon defending litigation about their power to issue orders so they could leave options open for later. (*Id.*, at 14–17). Second, they argue the President's comments on August 3 and 5 show defendants have been and are currently evading judicial review. (*Id.*, at 15–16). Finally, plaintiffs argue defendants have not made the public aware that the eviction moratorium is over. (*Id.*, at 5).

None of plaintiffs' evidence supports a finding that defendants voluntarily ceased the eviction moratorium or, for that matter, voluntarily ceased interpreting Section 264 as granting them the power to issue it. It is clear from the many iterations of *Ala. Ass'n of Realtors* that defendants fought in support of their interpretation of statutory authority and a stay against disrupting the orders at each stage of litigation. The fact that defendants have since obeyed court rulings vacating the stay and finding the defendants' exercise of statutory authority unconstitutional is not evidence that defendants voluntarily changed their position. Instead, it is evidence that defendants are respecting the court and the rule of law.

Additionally, defendants are not required to appeal a ruling to prove the genuineness of their interpretation, nor must they advertise the end of their orders in the same fashion and degree they used to advertise their beginning. Plaintiffs make no showing that defendants are leading the American public to believe they are still under protection of the order. In fact, many of the links plaintiffs use to share past orders now


11

lead to a sparse page, reading: "The Eviction Order ended on August 26, 2021."[7] Indeed, defendants may have other activities to which they have decided to devote their advertising and legal resources. Whether instituting a subsequent unconstitutional eviction moratorium is one of them is speculation for which plaintiffs provide no evidence but, arguably, past behavior. Such evidence, however, is relevant to reasonable expectations, as discussed below, not a question of defendants' voluntariness.

### 2. *Reasonable Expectations*

Plaintiffs argue that it is reasonable to expect that defendants will once again issue an eviction moratorium order. (*Id.*, at 8–18). Plaintiffs characterize this expectation as an "ever-present threat," (*Id.*, at 8), and point to the Supreme Court's June 29 and August 26 rulings, along with evidence discussed above, for support. (*Id.*, at 8–18). In light of the evidence presented, however, the Court disagrees.

Plaintiffs argue that defendants have already elected not to follow the Supreme Court's guidance by extending the Order after a majority of the Supreme Court justices indicated on June 29, 2021, that it should not stand. (*See id.*, at 8). The plaintiffs infer this from Justice Brett Kavanaugh's concurrence, which stated his decision not to vote in favor of vacating the stay was based in substantial part on the fact that the Order was about to expire. (*Id.*). Nevertheless, defendants issued the Second Order on August 3, 2021, the same day President Biden noted that most constitutional scholars found the Order dubious but extending it might buy more time for renters while litigation determined whether it was constitutional. (*Id.*).[8]

But as President Biden explained in an August 5, 2021 press conference, the

---

[7] *See* CDC, https://www.cdc.gov/coronavirus/2019-ncov/communication/Signed-CDC-Eviction-Order.pdf (last accessed October 12, 2021).

[8] *See also Remarks by President Biden on Fighting the COVID-19 Pandemic*, WHITE HOUSE (Aug. 3, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/03/remarks-by-president-biden-on-fighting-the-covid-19-pandemic (last accessed Oct. 7, 2021).

rationale for the Second Order was different than the original Order.[9]  The President expressed that a weight of constitutional scholars supported the Second Order because it was founded on the rapid spread of the Delta variant, instead of the Order's rationale of slowing the general spread of COVID-19.  *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55292 (Sept. 4, 2020).  Accordingly, the CDC instituted the Second Order to "temporarily halt[ ] evictions in counties with heightened levels of community transmission in order to respond to recent, unexpected developments in the trajectory of the COVID-19 pandemic, including the rise of the Delta variant."[10]

That the President questioned the Order's constitutionality and commented on strategic litigation surrounding it on the same day the Second Order was issued is unusual, but is ultimately beside the point.  The Second Order was founded on a different legal principle than the Order.  Thus, it was not a mere extension of a previous order, as others had been.  Instead, it presented a new question for courts to consider.  As such, the Supreme Court's implied disavowal of the Order on the basis that defendant CDC's authority under Section 264 did not allow the defendants to issue the Order, did not mean the Supreme Court would necessarily view the Second Order, issued in reaction to the Delta variant's rapid infection rate, the same way.  Moreover, it is important to note that plaintiffs extrapolate their beliefs about the Supreme Court's rulings based on Justice

---

[9] *Remarks by President Biden on Strengthening American Leadership on Clean Cars and Trucks*, WHITE HOUSE (Aug. 5, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/08/05/remarks-by-president-biden-on-strengthening-american-leadership-on-clean-cars-and-trucks (last accessed Oct. 7, 2021).

[10] Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, CDC (Aug. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/communication/Signed-CDC-Eviction-Order.pdf (accessed via http://web.archive.org/web/20210825055139/https://www.cdc.gov/coronavirus/2019-ncov/communication/Signed-CDC-Eviction-Order.pdf) (as of August 25, 2021).

Kavanaugh's concurrence and his comments that he would have been an additional vote in favor of the then-minority position to vacate the stay had the Order's expiration not loomed so closely. Apart from Justice Kavanaugh's concurrence, however, the Supreme Court's ruling was a bare statement of the outcome and a list of how the justices voted. There is no evidence of what rationale the justices voting in favor of vacating employed, even though the procedural history points to the interpretation of Section 264 as a likely turning point. Simply put, although plaintiffs assume that a majority of Supreme Court justices would agree with them were the question presented, that assumption is not the law.

Additionally, as plaintiffs note, the Supreme Court's August 26, 2021, ruling indicates that were the Court able to hear the case, their likelihood of success would be "virtually certain" because the Supreme Court interpreted Section 264 as insufficiently broad to support defendant CDC's power to issue such nationwide orders for eviction moratoriums. (Doc. 49, at 10); *Ala. Ass'n of Realtors*, 141 S. Ct. 2485, 2486 (2021). As such, the Supreme Court made clear that defendants would need congressional authorization for a future order. *Id*. But plaintiffs point to defendants' past actions in delaying responses in this case and extending the moratorium, after indicating both publicly and privately, through counsel, that they would not, as evidence that defendants are evading judicial review. (*Id.*, at 7–8, 16–17). Accordingly, plaintiffs argue one can reasonably expect defendants to ignore lessons from Supreme Court guidance and the D.C. District Court opinion by entering another future eviction moratorium order. (*Id.*, at 16–17).

The Court finds, however, that the current circumstances show otherwise. In its June 29, 2021, ruling, the Supreme Court addressed defendants' Order. In its August 26, 2021, ruling, the Supreme Court addressed defendants' Second Order. Plaintiffs present the Second Order—and therefore, the Supreme Court's second ruling—as an

extension of the first. (*Id.*, at 8) ("Having successfully duped the Supreme Court, CDC re-issued its moratorium *yet* again, on August 3."). In doing so, however, plaintiffs fail to account for the Second Order's new rationale, as the President reported in his August 5th press conference. Although the Second Order was predicated on Section 264 powers, it engaged with them in a different way, drawing a heightened need to avoid evictions because of the Delta variant's rapid infection rate. As the President explained, the Second Order also received the support of a substantial showing of constitutional scholars, as opposed to the minority of scholars who supported interpreting the Order as constitutional after the Supreme Court's June 29 ruling. In sum, when the Supreme Court interpreted the Second Order as exceeding the CDC's authority, it was interpreting a different order based on different rationale.

Naturally, defendants next steps after the Supreme Court's August ruling would be different from those following the June ruling. Additionally, the June ruling did not include a dissent, meaning defendants could not benefit from the reasoning of the four justices who would have vacated the stay. All defendants had to go by was a three-sentence concurrence giving some insight into Justice Kavanaugh's position. (Doc. 50, at 4). In contrast, the August ruling shared the justices' reasoning for seriously doubting that defendants' powers extended as far as the order purported. Considering this additional information, it would be unreasonable to expect defendants to push the envelope after the August ruling as they arguably did after the June ruling.

Now, with nearly three months having passed since the Supreme Court ruling on August 26, the Court finds it reasonable to view defendants' Second Order as a last-ditch effort, with no reasonable expectation it will recur. Defendants have not reinstituted the eviction moratorium. Despite defendants past delays and sudden changes in plans, whether they be the result of miscommunication or strategic trickery or some combination thereof, the Court cannot say it is reasonably expected at this point that defendants will

ignore such clear guidance from the Supreme Court. Plaintiffs are correct that the Supreme Court's August 26th ruling was not a decision on the merits. Nevertheless, the August ruling substantially altered circumstances such that it is no longer reasonable to expect defendants to reinstate their nationwide eviction moratorium. Thus, the voluntary cessation exception to mootness does not apply.

## V. CONCLUSION

For these reasons, the Court **grants** defendants' motion to **dismiss** the case as moot. (Doc. 45). The Clerk of Court is directed to term all outstanding motions.

**IT IS SO ORDERED** this 23rd day of November, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa